UNITED STATES of America, Plaintiff-Appellee,

v.

Grady James MANER, Defendant-Appellant.

No. 78–5785.

United States Court of Appeals, Fifth Circuit.

Feb. 4, 1980.

Donald F. Walton, Atlanta, Ga. (Court-appointed), for defendant-appellant.

C. Michael Abbott, Asst. U.S. Atty., Atlanta, Ga., for plaintiff-appellee.

Before BROWN, HILL and RANDALL, Circuit Judges.

JOHN R. BROWN, Circuit Judge:

Appellant Grady James Maner was convicted by a jury of bank robbery under 18 U.S.C.A. § 2113. There is no question that Maner robbed the bank. The only issue on appeal is whether the Government met its burden of proof on one element of the offense—that the bank was insured by the Federal Deposit Insurance Corporation (FDIC) on the date of the robbery. We hold the Government has met its burden—albeit a better job could surely have been done—and affirm.

### The Proof

On May 9, 1978, Maner robbed the Hiram, Georgia branch of the Citizens Bank of Dallas, Georgia. He was subsequently indicted under § 2113.

To establish federal jurisdiction and to prove a violation of § 2113, the Government must show that the bank was insured by the FDIC at the time of the robbery. *United States v. Murrah,* 478 F.2d 762, 764 (5th Cir. 1973); *Hewitt v. United States,* 110 F.2d 1, 5 (8th Cir. 1940). The Government's proof consisted of oral testimony of two witnesses and a certificate of insurance issued by the FDIC five years before the robbery. Howell C. Ellsberry, branch manager of the Hiram Bank, attempted to testify that the bank was insured on the date of the robbery. Counsel for Maner objected to this statement. During voir dire Ellsberry admitted that he was not privy to communications between the FDIC and the bank, that he had no knowledge of whether the FDIC premiums had been paid, nor had he any knowledge of whether the bank was insured on the date of the robbery. Since Ellsberry had no personal knowledge of whether the bank was insured, the Trial Judge sustained Maner's objection to this portion of Ellsberry's testimony. However, the Trial Judge did allow Ellsberry to testify that he had seen a certificate of insurance issued by the FDIC in the bank vault, Charter Number 1872D, dated March 15, 1963. Moreover, Ellsberry testified that copies of the certificate were posted on each teller window for public view.

Richard G. Clark, a security officer, assistant vice president and custodian of the bank records, also testified, identifying a certificate of insurance from the FDIC, Charter Number 18720-8, dated September 15, 1973. He stated that the certificate was a record maintained under his supervision in the bank's regular course of business. And the certificate which Clark described was introduced into evidence.

At the close of the Government's case, Maner moved for a judgment of acquittal on the ground that the Government failed to establish that the bank was insured by the FDIC on the date of the robbery. The District Court denied the motion, reasoning that the introduction and admission of the September 15, 1973 certificate of insurance was sufficient to allow the case to go to the jury. The jury convicted Maner and he appeals.

### The Cases

Our standard of review on a motion for judgment of acquittal is whether viewing the evidence most favorably to the Government, a reasonable-minded jury could find the admissible evidence sufficient to support the jury's verdict of guilty. *Glasser v. United States,* 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942); *United States v. Brown,* 587 F.2d 187, 190 (5th Cir. 1979); *United States v. Kohlmann,* 491 F.2d

1250, 1253 (5th Cir. 1974). Moreover, all reasonable inferences and credibility choices must be made in favor of the jury verdict. *United States v. Wieschenberg,* 604 F.2d 326, 330 (5th Cir. 1979); *United States v. Black,* 497 F.2d 1039, 1041 (5th Cir. 1974).

This Court has frequently considered the sufficiency of the evidence of insurance under § 2113. In each case thus far we have found the evidence sufficient.

In *Cook v. United States,* 320 F.2d 258 (5th Cir. 1963), we set a low threshold of proof of insurance for appellate review. Admittedly, *Cook* involved a standard of plain error, different than the one we face here, since no objection, motion for judgment of acquittal, or motion for a new trial was lodged below. However, our analysis in *Cook* is nonetheless illuminating. In *Cook,* the evidence consisted entirely of proof of insurance at the time of trial. We applied an evidentiary principle derived from Wigmore that proof of a condition—the condition of being insured—permits an inference that the condition existed earlier in time—at the time of the robbery. While we cautioned against excessive use of such evidentiary extrapolation, we also observed that banks were insured almost without exception and concluded that a reasonable inference of insurance at the time of the robbery was permissible.

In at least three cases subsequent to *Cook* the issue of insufficiency has been raised to the Fifth Circuit. In *Ahlstedt v. United States,* 325 F.2d 257 (5th Cir. 1963), *cert. denied,* 377 U.S. 968, 84 S.Ct. 1650, 12 L.Ed.2d 738 (1964) a bank officer testified that the bank was insured at the date of the robbery and identified the FDIC certificate of insurance. We held this evidence was sufficient. *United States v. Thompson,* 421 F.2d 373 (5th Cir.), *vacated on other grounds,* 400 U.S. 17, 91 S.Ct. 122, 27 L.Ed.2d 17 (1970), involved similar testimony by a bank officer and the certificate itself was entered into evidence. We expressed some dismay at the minimal proof offered by the Government—"we are at a loss to understand why the Government did not offer better proof"—but still deemed the Government's evidence sufficient. 421 F.2d at 379. Then, in *United States v. Murrah,* 478 F.2d 762 (5th Cir. 1973), only the officer's testimony of insurance was put in evidence. While the Court was primarily concerned with the admissibility of the evidence rather than its sufficiency, the case is still illustrative of the kinds of proof we have seen on the insurance issue.

Only recently we again faced challenges of insufficient insurance evidence. In *United States v. Fitzpatrick,* 581 F.2d 1221 (5th Cir. 1978) (reversing conviction on other grounds), a certificate of insurance denoting insurance ten years before the robbery was introduced into evidence. In addition, the bank comptroller testified that the bank was insured at the date of the trial. Thus, there was evidence of insurance both before and after the robbery. Once more the Government's proof was sparse—"the government obviously could have done a much better job of proving the bank's insured status at the date of the crime," 581 F.2d at 1223—but sufficient for a reasonable inference by the jury that the bank was insured at the time of the robbery.

Then in *United States v. Williams,* 592 F.2d 1277 (5th Cir. 1979) (also reversing conviction on other grounds), we faced what we described as evidence of insurance "probably close to the minimum we could allow . . . ." 592 F.2d at 1282. In *Williams* one bank officer testified that a parent bank was insured and the robbed bank was a branch of the parent bank. However, on cross examination, the officer revealed that he had never seen the insurance contract and did not know whether the insurance premiums had been paid. Another bank officer testified that he was responsible for paying the insurance premiums for the parent bank, that the parent bank was insured, that all branch offices were similarly insured, but that a separate certificate did not exist for the branch office. On cross examination, he conceded that he did not even know if the parent bank's insurance contract specifically covered the branch bank. Thus, there was no direct testimony or conclusive evidence that the

robbed branch bank was insured. Nonetheless, we concluded that the evidence was sufficient to permit a reasonable jury to infer that the branch bank was insured at the time of the robbery.

### The Sufficiency

█ In our case, Clark, a bank officer and custodian of bank records, properly identified the certificate of insurance by its Charter Number and its date of issuance. An insurance certificate with this very same number and date was introduced in evidence. Maner does not challenge the admission of this evidence. Thus, given this proof, it is clear that a reasonable jury could infer beyond a reasonable doubt that the bank was insured *before* the time of the robbery.

Maner argues, however, that there must also be evidence that the insurance was still in effect on the date of the robbery. He urges such evidence is lacking here. Maner argues that Ellsberry, the bank manager, had no personal knowledge of whether or not the bank was insured. Hence, says Maner, Ellsberry was completely incompetent to testify as to any matter regarding the insurance.

F.R.Evid. 602 provides that a witness may testify only as to those matters on which he has personal knowledge. However, Maner fails to distinguish testimony of which Ellsberry actually did not have personal knowledge and testimony of which he did. Ellsberry's own testimony demonstrates this distinction.

On the one hand, Ellsberry conceded on voir dire that he lacked access to communications between the FDIC and the bank, as well as knowledge of whether the FDIC premiums were paid and knowledge of whether the bank was insured at the time of the robbery. Thus, Ellsberry lacked personal knowledge of whether the bank was in fact insured on the date of the robbery. Accordingly, the Trial Judge properly sustained Maner's objection to Ellsberry's attempt to testify as to any conclusion that the bank was so insured.

On the other hand, Ellsberry's own testimony also demonstrated that he *did* have personal knowledge concerning the rest of his testimony—he continued to testify only as to matters which he perceived with his own eyes. He said he saw the insurance certificate and the copies posted on the windows of each teller. Therefore, Ellsberry was fully competent to testify as to those matters within his personal line of vision. See *United States v. Thompson,* 559 F.2d 552, 553–54 (9th Cir.), *cert. denied,* 434 U.S. 973, 98 S.Ct. 528, 54 L.Ed.2d 464 (1977). Indeed, Ellsberry's testimony that he saw the certificate of insurance in the bank vault corroborated Clark's identification of the certificate.

Maner also suggests that the fact that Ellsberry described a certificate with a different Charter Number and a different date than what Clark described, rendered Ellsberry's testimony incompetent. However, this discrepancy was for the jury to resolve. Indeed, the closeness of the numbers and dates could suggest merely a faulty recollection on the part of Ellsberry rather than any lack of personal knowledge or possibility of fabrication. Once the evidence was properly before them, the conclusions to be drawn from the evidence were for the jury to make.

From all this evidence of insurance before the robbery, it is at least arguable that the universal presumption employed in the *Cook* case that all banks are federally insured could be applied here. And, as in *Cook,* it is arguable that a reasonable jury could infer beyond a reasonable doubt that proof of the condition of insurance before the robbery, absent evidence to the contrary, suggests the continuation of that insurance.

Yet we need not and do not rest our decision on this testimony or *Cook* alone. For it must be remembered that Ellsberry also testified that the insurance certificate copies were posted on teller windows for public display. Whereas Clark's and Ellsberry's other testimony concerning the certificate of insurance indicates the bank was insured *before* the time of the robbery, this

testimony as to the copies permits the inference that the bank was insured *at the time of trial as well.* Thus, as in *Fitzpatrick,* the very same quantum of proof of insurance—proof of insurance before and after the robbery—was properly before the jury.

Moreover, the jury's conclusion that the bank was insured is a reasonable one. By federal statute each insured bank must clearly display a sign indicating that it is insured. 12 U.S.C.A. § 1828(a). In addition, FDIC rules specify numerous details as to the content of such signs and require that such signs be placed wherever insured deposits are usually taken, presumably including teller windows. 12 CFR § 328.1 (1979). Moreover, any violation of this stat-

ute or these rules results in daily fines assessed against the bank. 12 U.S.C.A. § 1828(a). On the other hand, if a bank would fraudulently post a notice of insurance when it was not so insured, the bank might be subject to charges of fraud under federal as well as state law. *Cf.* 18 U.S.C.A. § 1001; Ga.Code Ann. § 41A–9906(a). Hence, it was certainly reasonable of the jury to infer beyond a reasonable doubt that the bank was insured.

Finally, we have found no case still of precedential value from this Court or any other Circuit Court reversing a jury or Judge conviction under § 2113 for insufficient proof of insurance.[1] Certainly we rec-

---

1. The following digest of cases demonstrates the kind and quantum of evidence which the Circuit Courts have ruled to be sufficient proof of insurance: First Circuit: *Gorman v. United States,* 380 F.2d 158, 165 (1st Cir. 1967) (testimony of insurance before robbery, evidence bank still member FDIC near time of robbery and at time of trial, and no indication membership revoked); Third Circuit: *United States v. McIntosh,* 463 F.2d 250 (3d Cir. 1972) (uncontradicted testimony by assistant vice president and manager of bank that he was custodian of bank charter and that on date of robbery bank was member FDIC); Fourth Circuit: *United States v. Wingard,* 522 F.2d 796, 797 (4th Cir. 1975), *cert. denied,* 423 U.S. 1058, 96 S.Ct. 792, 46 L.Ed.2d 648 (1976) (dicta: "The FDIC certificate issued to a bank constitutes sufficient proof of its insured status."); *United States v. Safley,* 408 F.2d 603, 605 (4th Cir.), *cert. denied,* 395 U.S. 983, 89 S.Ct. 2147, 23 L.Ed.2d 772 (1969) (where a bank employee testified deposits "are" insured by corporation, and defendants did not suggest that bank was not insured, but only that the proof was insufficient, testimony could refer to insurance at time of trial or time of robbery and was sufficient); Sixth Circuit: *United States v. Rowan,* 518 F.2d 685, 692–93 (6th Cir. 1975), *cert. denied,* 423 U.S. 949, 96 S.Ct. 368, 46 L.Ed.2d 284–85 (certificate of insurance before robbery, statement by bank manager branch insured on date of trial was sufficient, even though manager admitted he did not know of his personal knowledge if premiums paid during time of robbery); *United States v. Riley,* 435 F.2d 725, 726 (6th Cir. 1970) (certificate properly identified by bank auditor); *United States v. Carter,* 422 F.2d 519, 520 (6th Cir. 1970) (while sufficiency of evidence not in question, assistant cashier testified that bank was member FDIC and identified certificate, and certificate of insurance was introduced into evidence); Seventh Circuit: *United States v. Higgans,* 507 F.2d 808, 813 (7th Cir. 1974) (certificate of insurance before robbery, testimony by bank vice president that all national banks had FDIC insurance, testimony that bank operated as national bank, bank regularly paid FDIC premiums and testimony that examiners assured him bank was insured); *United States v. DeTienne,* 468 F.2d 151, 158–59 (7th Cir. 1972) *cert. denied,* 410 U.S. 911, 93 S.Ct. 974, 35 L.Ed.2d 274 (1973) (certificate dated after robbery, testimony of periodic renewal of prior certificate covering robbery time and testimony that bank insured on date of robbery); *United Sates v. Skiba,* 271 F.2d 644 (7th Cir. 1959), *cert. denied,* 362 U.S. 924, 80 S.Ct. 678, 4 L.Ed.2d 473 (1960) (certificate of insurance, testimony by bank cashier that bank operated under certificate on date of record, and no evidence challenging cashier's testimony of insurance); Eighth Circuit: *United States v. Bierey,* 588 F.2d 620 (8th Cir. 1978), *cert. denied,* 440 U.S. 927, 99 S.Ct. 1260, 59 L.Ed.2d 482 (1979) (evidence branch bank insured by premium notice and cancelled checks showing entire banking institution insured); *United States v. Clemons,* 532 F.2d 122 (8th Cir. 1976) (officer identified certificate, premium notice and cancelled check for payment of year of robbery, and parties stipulated premium had in fact been paid); *Scruggs v. United States,* 450 F.2d 359, 360–61 (8th Cir.), *cert. denied,* 405 U.S. 1071, 92 S.Ct. 1521, 30 L.Ed.2d 804 (1971) (certificate identified by executive vice president of bank and evidence insurance paid and in effect on date of robbery); Ninth Circuit: *United States v. Ballard,* 418 F.2d 325, 327 (9th Cir. 1969) (invoice from Federal Savings and Loan Corporation for insurance during time of robbery and cancelled check, testimony certificate was hanging on wall in office, and testimony by bank officer insurance in effect at time of robbery); *United States v. Phillips,* 427 F.2d 1035, 1036–37 (9th Cir.), *cert. denied,* 400 U.S. 941, 91 S.Ct. 108, 27 L.Ed.2d 106 (1970) (unchallenged testimony of

ognize the possibility that we or our sister Courts may some day be faced with an insufficiency of the evidence of insurance under § 2113 which would warrant reversal. Indeed, we have difficulty comprehending why the Government repeatedly fails to prove this element more carefully since the Government's burden is so simple and straightforward.[2] As in the other cases we have discussed, the Government treads perilously close to reversal in this case, and may soon find itself crossing the line from sufficiency to insufficiency. Just barely, under our standard of appellate review and the relevant Fifth Circuit decisions, we hold that the Government's proof of insurance in this case was sufficient.[3]

■ Although we often despair at repeatedly calling Trial Courts' attention to the necessity of not repeating again and again an action we often hold to be error, see *United States v. Chiantese,* 546 F.2d 135 (5th Cir.), *modified en banc,* 560 F.2d 1244 (1977), *on remand,* 582 F.2d 974 (1978), *cert.*

*denied,* 441 U.S. 922, 99 S.Ct. 2030, 60 L.Ed.2d 395 (1979), the fault lies not with the Trial Judge. It rests squarely on the shoulders of the prosecutor. The principal purpose in the long list of cases from other Circuits (see note 1, *supra* ) is to reveal that this is a nationwide plague infecting United States Attorneys throughout the land. Hopefully the Attorney General will sense and remedy this national deficiency by directions pointing out the simple ways to prove this simple but indispensable fact.[4]

AFFIRMED.

---

operations manager of bank that deposits were insured); *United States v. Jackson,* 430 F.2d 1113 (9th Cir. 1970) (certificate identified by bank auditor and testimony insurance continued until insurance cancelled).

We have found one case in which the Court reversed on a closely related issue—the Government's failure to prove the bank was a "national" bank. *United States v. King,* 426 F.2d 278 (9th Cir. 1970). In that case, the Ninth Circuit remanded for an evidentiary hearing to permit the Government to prove the bank was a national bank. However, this case was overruled *sub silentio* by *Burks v. United States,* 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978).

2. For example, one simple method of proof would be to introduce the certificate of insurance issued by the FDIC, the contract of insurance between the bank and the FDIC, and the cancelled check for the period of time covering the robbery. See also *United States v. Clemons,* 532 F.2d 122 (8th Cir. 1976) (officer identified certificate, premium notice and cancelled check for payment of year of robbery and party stipulated premium had in fact been paid); *United States v. Glover,* 394 F.Supp. 253 (E.D. Pa.), *aff'd without opinion,* 523 F.2d 1051 (3d

Cir. 1975) (evidence included cancelled checks from bank to FDIC and computer printouts from bank's internal records, establishing account was drawn down by face amounts of checks, copy of certificate of insurance, and statement by executive secretary of FDIC of absence of record or entry in official records of FDIC terminating insured status of bank). Effective use might also be made of certified copies of business or other official records. See Business Records Act, 28 U.S.C.A. §§ 1732, 1733, F.R.Evid. 803(6), 803(8), 902 and legislative history of the Federal Rules of Evidence in [1974] U.S.Code Cong. & Admin.News, p. 7051.

3. The Government also contends, as an alternative basis for affirming Maner's conviction, that both the Sixth and Seventh Circuits have held that the introduction of the FDIC certificate is sufficient to establish federal jurisdiction. Since our proof consists of more than the certificate alone, we do not pass on this argument.

4. Lack of sufficient proof now compels reversal and dismissal of the indictment, not just remand for a new trial with better evidence. *Burks v. United States,* 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978).