**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Jake P. PLATENBURG,
Defendant-Appellant.**

No. 80–3977.

United States Court of Appeals,
Fifth Circuit.*
Unit A

Oct. 1, 1981.

---

* Former Fifth Circuit case, Section 9(1) of Public Law 96–452—October 14, 1980.

Robert N. Habans, Jr. (Court-appointed), New Orleans, La., for defendant-appellant.

Fredericka L. Homberg, Michael Schatzow, W. Glenn Burns, Asst. U. S. Attys., New Orleans, La., for plaintiff-appellee.

Before THORNBERRY, REAVLEY and POLITZ, Circuit Judges.

POLITZ, Circuit Judge:

Jake P. Platenburg appeals his conviction by a jury of conspiring to make and making false statements to a bank insured by the Federal Deposit Insurance Corporation (FDIC) in violation of 18 U.S.C. §§ 1014, 371 & 2. Platenburg assigns several errors, only one of which we need consider—whether the government adduced sufficient evidence to establish that the bank was insured by the FDIC at the time of the events in question. Finding that the government failed to prove this essential element, we reverse the conviction and dismiss the indictment. *Burks v. United States*, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978).

In late 1979, appellant and his girlfriend, Carol Davis, sought a loan from the Liberty Bank and Trust Company in New Orleans to purchase an automobile. All of the pertinent documents were signed by Davis but the evidence reflects that Platenburg materially assisted her in making false statements on the loan application and in fraudulently verifying her employment and salary status.

At the close of the government's case, Platenburg moved for judgment of acquittal, contending the government had not proven, as the indictment charged, that the Liberty Bank was "a bank insured by the Federal Deposit Insurance Corporation." The district judge denied the motion and allowed the government to reopen its case to offer further proof. The government then introduced a 1972 certificate of FDIC insurance.[1] At the close of the evidence Platenburg unsuccessfully renewed his mo-

---

1. The government suggests that counsel stipulated to FDIC coverage, an assertion vigorously rejected by defense counsel who insists he stipulated only to the authenticity of the copy of the certificate. Our review of the record convinces us that there was no stipulation as to the FDIC status. The following exchange is the only record reference concerning proof of FDIC insurance at the time of the offense.

    THE COURT: I appreciate everybody making it for this more or less early hour. Pursuant to an order which I entered at the end of discussions on motions after the Jury had left, the Government has the right to reopen for purpose of calling one witness.

tion for judgment of acquittal. The jury returned a verdict of guilty on both counts. The district court subsequently rejected Platenburg's motions for judgment of acquittal n. o. v. and for a new trial, both of which raised the FDIC coverage issue.

We again address the question of the quantum of evidence required to establish, in a criminal case, that the financial institution involved is insured by the FDIC. Proof of this status is not a mere formality; it is an essential element of the federal offense charged in the case before us. Indeed, federal jurisdiction depends on this status. *United States v. Murrah*, 478 F.2d 762 (5th Cir. 1973). The government must prove beyond a reasonable doubt that the Liberty Bank and Trust Company was insured by the FDIC in 1979 when the charged criminal acts occurred.

Despite the fact that FDIC insured status is an express requirement of the applicable statutes, an essential part of a valid indictment, and an indispensible item of proof of an offense, prosecutors have been extremely lax in the treatment accorded this element. This attitude is not unique to this circuit; we find examples occurring across the nation. As we observed in *United States v. Maner*, 611 F.2d 107, 112 (5th Cir. 1980), "this is a nationwide plague infecting United States Attorneys throughout the land." In *Maner*, we even went so far as to suggest a very simple and easy method of proving this element. Our suggestion appears to have gone unheeded.

Although we have issued cautions, such as our observation that the evidence of

> [Government Counsel]: The Defense and Government has agreed we will not recall any witness; what we will do is offer, file and introduce into evidence the Federal Deposit and Insurance Corporation Certificate for the Liberty Bank & Trust Company.
> [Defense Counsel]: We stipulate that's an accurate Xerox copy.
> THE COURT: Let Government Exhibit 15 be admitted in accordance.
> Government Exhibit 15 is a copy of the certificate of insurance issued by the FDIC to Liberty Bank and Trust Company on November 16, 1972.

FDIC status was "close to the minimum we could allow," *United States v. Williams*, 592 F.2d 1277, 1282 (5th Cir. 1979) (conviction reversed on other grounds), we have never reversed a conviction for insufficient proof of this fact. Nor are we aware of any circuit having previously done so. However, in *Maner* we moved from cautionary statements to a clarion call that the day would come when our reluctance to reverse on the issue of FDIC proof would be overcome:

> Certainly we recognize the possibility that we or our sister Courts may some day be faced with an insufficiency of the evidence of insurance ... which would warrant reversal. Indeed, we have difficulty comprehending why the Government repeatedly fails to prove this element more carefully since the Government's burden is so simple and straightforward. As in the other cases we have discussed, the Government treads perilously close to reversal in this case, and may soon find itself crossing the line from sufficiency to insufficiency.

611 F.2d at 111–12. The day has come; the line from sufficiency to insufficiency has been crossed.

In our prior decisions upholding the adequacy of the evidence, the measure of proof substantially exceeded that now before us. In those cases a certificate of insurance was usually introduced, along with the testimony of bank officials.[2] Although the certificates were not always current and in some cases the testimony of the bank officer was less than conclusive as to the insured status

2. In *Ahlstedt v. United States*, 325 F.2d 257 (5th Cir. 1963), *cert. denied*, 377 U.S. 968, 84 S.Ct. 1650, 12 L.Ed.2d 738 (1964), *United States v. Thompson*, 421 F.2d 373 (5th Cir.), *vacated on other grounds*, 400 U.S. 17, 91 S.Ct. 122, 27 L.Ed.2d 17 (1970), and *United States v. Fitzpatrick*, 581 F.2d 1221 (5th Cir. 1978) (reversing conviction on other grounds) the government introduced both a certificate of insurance and the testimony of one or more bank officers. In *United States v. Murrah*, 478 F.2d 762 (5th Cir. 1973), and *United States v. Williams*, 592 F.2d 1277 (5th Cir. 1979) (reversing conviction on other grounds), the government only introduced testimony of bank officers.

at the time of the illegal acts, we concluded that under the facts of each case the evidence was sufficient to permit a reasonable jury to infer that the bank was insured.[3]

In *Maner* we reached the nadir of the acceptable level of proof. The government introduced a copy of the insurance certificate issued five years before the offense, buttressed by the testimony of a bank officer that the certificate was a record maintained under his supervision in the bank's regular course of business. Another employee who had no personal knowledge of the current insured status was permitted to testify that he had seen, in the bank vault, a certificate issued by the FDIC about 15 years prior to the offense and that copies of the certificate were posted in public view on each teller's window. After a thorough review of the precedent in this and all other circuits, we held that the government's proof of insurance "just barely" was sufficient. 611 F.2d at 112.[4]

In the case before us the only evidence introduced by the government was a copy of a 1972 certificate of insurance, a certificate which antedates the charged events by seven years. There was nothing more.

The verdict and judgment of the district court is REVERSED.

---

3. The minimum level of evidence which we accepted prior to *Maner* was in *Cook v. United States*, 320 F.2d 258 (5th Cir. 1963). The entire evidence in *Cook* consisted of proof of insurance at time of trial. We applied an evidentiary principle that proof of an insured condition at time of trial permits an inference that the condition existed at an earlier time. In addition to the inapplicability of that presumption here, *Cook* is also not applicable because it involved a different standard of appellate review. Unlike the present case, in *Cook* there was no objection, motion for new trial, or motion for judgment of acquittal. As a result, the court was restricted to the plain error standard

of review, a restriction which does not apply in the case at bar.

4. Following *Maner*, in *United States v. Brown*, 616 F.2d 844, 848 (5th Cir. 1980), we found evidence consisting of a 1963 telegram stating the effective date of the FDIC insurance and the testimony of the bank officer who was custodian of the bank's business records that the current insurance premiums had been paid to be "sparse," but sufficient.

\* Former Fifth Circuit case, Section 9(1) of Public Law 96–452—October 14, 1980.