**UNITED STATES of America, Plaintiff–Appellee,**

**v.**

**Steven Wayne SLOVACEK, Defendant–Appellant.**

No. 87–2713.

United States Court of Appeals,
Fifth Circuit.

March 1, 1989.

151 (5th Cir.1973).

Ron Barroso, Corpus Christi, Tex., (court-appointed), for Slovacek.

Mervyn Hamburg, Atty. Appellate Section, Crim. Div., U.S. Dept. of Justice, Washington, D.C., Paula C. Offenhauser, Asst. U.S. Atty., Houston, Tex., for U.S.

Before CLARK, Chief Judge, TIMBERS * and RUBIN, Circuit Judges.

TIMBERS, Circuit Judge:

Steven Wayne Slovacek ("appellant") appeals from a judgment entered May 27, 1987 in the Southern District of Texas, Corpus Christi Division, Hayden W. Head, Jr., District Judge, upon a jury verdict convicting him of armed bank robbery in violation of 18 U.S.C. § 2113(a) (1982).[1] The jury acquitted appellant of a second armed bank robbery charge.

On appeal appellant argues that (1) the court erred in denying his motion for a judgment of acquittal pursuant to Fed.R. Crim.P. 29(a) on the ground that the government failed to prove an essential element of the offense charged, namely, that the bank which was robbed was insured by the Federal Deposit Insurance Corporation ("FDIC"); (2) the court's charge concerning this element was prejudicial and constituted plain error, because it was inadequate and because it constructively amended the indictment; and (3) the $52,000 fine imposed on appellant exceeded the statutory maximum.

Although the evidence concerning the bank's insured status was barely adequate and the court's charge was not a model one, we hold that there was no reversible error. We affirm.

I.

We summarize only those facts believed necessary to an understanding of the issues raised on appeal.

Appellant, a police officer, was convicted of participating with a second man in the robbery of $52,000 ("the first robbery") from four employees of the First State Bank & Trust Company of Port Lavaca, Texas ("the bank"). The robbery occurred on August 15, 1986 when the four employees, one of whom was a security guard, arrived at the site of an automatic bank teller machine ("ATM") to replenish its money supply. The ATM was some distance from the bank. Before the four employees could get out of their car, two masked men drove up behind them, leaped out of the car and confronted them with guns. The four were ordered to get out of their car and leave the money and keys inside. The robbers then entered the employees' car and drove off. A second somewhat similar robbery ("the second robbery") took place on October 27, 1986 when two men robbed an employee of another bank when he arrived to replenish that bank's ATM.

Appellant and his co-defendant, John Acye McNeil ("McNeil"), a fellow police officer, were indicted on two counts of armed bank robbery in violation of 18 U.S.C. § 2113(a) (1982). Appellant and McNeil were tried separately. At appellant's trial the government produced several witnesses who linked him to the first robbery. These witnesses included David Anthony Hamilton ("Hamilton"), the security guard present at the first robbery. Hamilton testified that appellant and McNeil had approached him two days prior to the first robbery and told him of their plans. He also testified that they told him that no one would be hurt if he cooperated during the robbery. They threatened to harm him, however, if he revealed their plans. Hamilton cooperated before and during the first robbery. Later he told the police of his conversation with appellant and McNeil.

The government also adduced testimony of other witnesses who linked appellant to the crime. Ronald Klare ("Klare"), a friend of appellant, testified that appellant showed him large amounts of cash immediately after the first robbery but attributed the cash to the proceeds of an investment. Klare also testified that appellant remarked to him after the first robbery that it would be easy for a police officer to rob bank employees of money to be used for replenishing an ATM. Ernest Garcia ("Garcia"), with whom appellant was confined in

---

* Circuit Judge of the Second Circuit, sitting by designation.

1. This statute pursuant to which appellant was convicted subsequently was amended in respects not here material.

the county jail while awaiting trial, testified that appellant admitted to him that he had "robbed Port Lavaca" and that appellant made several other statements to Garcia linking appellant to the crime. Garcia also testified that appellant threatened him when appellant discovered that Garcia would testify against him. The government also adduced evidence that appellant made a $10,000 cash down payment on a new truck three days after the first robbery.

The jury convicted appellant of the first robbery but acquitted him of the second robbery.[2] The court sentenced appellant to 20 years imprisonment, fined him $52,000, ordered him to make $52,000 restitution to the bank and ordered him to pay the $50 special assessment. Appellant and McNeil both dismissed their original appeals, but appellant later successfully moved to reinstate his appeal. McNeil apparently did not move to reinstate his appeal.

## II.

■ At the time of the robbery, the controlling statutory provisions were as follows:

> "(a) Whoever, by force or violence, or by intimidation, takes ... from the person or presence of another any property or money ... belonging to, or in the care, custody, control, management, or possession of, any bank ...
>
> Shall be fined not more than $5,000 or imprisoned not more than twenty years, or both.

> .     .     .

> (f) As used in this section the term 'bank' means any member bank of the Federal Reserve System, and any bank ... organized or operating under the laws of the United States, *and any bank the deposits of which are insured by the Federal Deposit Insurance Corporation."*

18 U.S.C. §§ 2113(a), 2113(f) (1982) (emphasis added). Proof that the institution meets this definition of "bank" at the time

of the robbery is an essential element of the offense that must be proven beyond a reasonable doubt to establish federal jurisdiction. *E.g., United States v. Rangel,* 728 F.2d 675, 675–76 (5th Cir.), *cert. denied,* 467 U.S. 1230 (1984); *United States v. Maner,* 611 F.2d 107, 108 (5th Cir.1980); *United States v. Williams,* 592 F.2d 1277, 1281–82 (5th Cir.1979). Since the bank in the instant case was state chartered and not a member of the Federal Reserve System, the government was required to prove this element by showing that the bank's deposits were insured by the FDIC at the time of the robbery.

At trial the government's sole evidence as to this element was the testimony by a vice-president of the bank that it had been insured by the FDIC on the day of the robbery and that he had been a vice-president of the bank on that day. Appellant's attorney did not cross-examine the witness on this point. At the close of the government's evidence, appellant made a general motion for a judgment of acquittal under Fed.R.Crim.P. 29(a) on several grounds, including the assertion that the government had presented insufficient evidence of appellant's guilt beyond a reasonable doubt. The motion was denied.

On appeal appellant argues that the denial of his motion was error because the evidence was insufficient to prove beyond a reasonable doubt that the bank was insured by the FDIC at the time of the first robbery. The standard of review with respect to such a claim is whether in " 'viewing the evidence presented most favorable to the Government, a reasonable-minded jury could accept the relevant and admissible evidence as [adequate] and sufficient to support the conclusion of the defendant's guilt beyond a reasonable doubt' ". *United States v. Brown,* 587 F.2d 187, 190 (5th Cir.1979) (quoting *United States v. Kohlmann,* 491 F.2d 1250, 1253 (5th Cir.1974)).

■ Appellant argues that the evidence of the status of the bank's FDIC insurance simply was insufficient under

---

**2.** McNeil was tried prior to appellant and was convicted of the second robbery. On the

government's motion the court dismissed the indictment against McNeil for the first robbery.

that standard of review to support the conviction.[3] The Fifth Circuit cases on this issue demonstrate that the evidence adduced here was close to the minimum permitted. An excellent survey of the status of both Fifth Circuit and national case law as of 1980 is set forth in Judge Brown's opinion in *Maner, supra,* 611 F.2d at 108–112 & n. 1. There the evidence as to the financial institution's insured status consisted of the testimony of two bank officials and a five year old FDIC insurance certificate. One official identified the FDIC certificate "as a record maintained under his supervision in the bank's regular course of business". *Id.* at 108. The other official described a second older FDIC insurance certificate he had once seen and testified that a copy of the certificate was posted at each teller window. *Id.* The Court described this evidence as "[j]ust barely" meeting the required quantum of proof of insured status. *Id.* at 112. The Court appeared to establish a minimum level of acceptable proof below which reversal would be warranted. *United States v. Platenburg,* 657 F.2d 797, 800 (5th Cir. Unit A Oct.1981) ("In *Maner* we reached the nadir of the acceptable level of proof".). Appellant argues that the evidence in the instant case falls below that level.

The *Maner* standard of sufficiency, however, might be said to have been undermined by *Rangel, supra.* There the sole evidence of a credit union's federally insured status was the testimony of the credit union's assistant vice-president that the credit union was federally insured at the time of trial. *Rangel, supra,* 728 F.2d at 676. We stated that this evidence, when not challenged on cross-examination, was sufficient. *Id. Rangel* arguably might appear to control the instant case, because in both cases the sole evidence of insured status was the testimony of an official unchallenged on cross-examination. *See also Cook v. United States,* 320 F.2d 258, 259–60 (5th Cir.1963). Indeed, the evidence here might be said to be slightly stronger because the testimony went to the insured status on the day of the robbery rather than at the time of trial.

Although there are two cases in our Court where the evidence of insured status was held to be insufficient, we believe they are distinguishable. In *United States v. Trevino,* 720 F.2d 395 (5th Cir.1983), the government adduced no evidence of insured status. In *Platenburg, supra,* the sole evidence of insured status was the bank's insurance certificate dated 7 years prior to the offense.

Although the instant case is a close one in view of *Rangel,* we hold that the evidence of insured status here provided an adequate basis for a reasonable-minded jury to find beyond a reasonable doubt that the bank was insured by the FDIC on the day of the robbery.

There are numerous indications in our prior decisions that prosecutors appear to be indifferent to the fact that we have held that the jurisdictional requirement in 18 U.S.C. §§ 2113(f), 2113(g), 2113(h) (1982) is an essential element of the offense. Indeed, in some of these cases one searches in vain for any careful and intelligent effort to prove this element. We are aware that the offices of United States Attorneys frequently have a high turnover in personnel and limited resources. Nevertheless, we do not believe that this problem cannot be solved, especially when "[l]ack of sufficient proof [of this element] now compels reversal and dismissal of the indictment, not just remand for a new trial with better evidence". *Maner, supra,* 611 F.2d at 112 n. 4 (citing *Burks v. United States,* 437 U.S. 1 (1978)).

---

**3.** At the time the briefs on the instant appeal were first filed, the trial transcript showed that both the prosecutor and the bank's vice-president referred to the FDIC as the "Federal *Government* Insurance Corporation", and not the Federal *Deposit* Insurance Corporation. In his brief appellant argued that no evidence whatsoever was presented showing that the bank was insured by the Federal *Deposit* Insurance Corporation. This argument is now moot because the district court on the government's motion ordered the trial transcript corrected to read "Federal *Deposit* Insurance Corporation" at the relevant points. The court found that the similarity between the stenographic symbols for "deposit" and "government" had led to a transcription error.

### III.

Appellant argues that two errors in the court's jury instructions concerning proof of federal jurisdiction require reversal, despite appellant's failure to object to them, or to direct the court's attention to their insufficiency, at the time of trial. The court instructed the jury on this issue as follows:

"There are three essential things that are required to be proven beyond a reasonable doubt in order to establish that the offenses alleged have been violated and committed [sic].

First, the defendant acted to take from the person or presence of another money belonging to a bank *as charged*.

.     .     .

The 'bank' has a special meaning. I told you earlier it means a member of the Federal Reserve System or any bank organized under the laws of the United States and any bank, the deposits of which are insured by the [FDIC]."

(emphasis added).

▇▇▇ First, appellant argues that these instructions were insufficient because proof of federal jurisdiction is an essential element of the offense; but the jury was not told this and the instructions were inadequate to convey that requirement. This argument, however, runs afoul of *United States v. Brown*, 616 F.2d 844 (5th Cir. 1980). There the court's sole instruction on the jurisdictional element was that the government was required to prove the taking of a savings and loan association's money from the presence of another *"as charged"*, *id.* at 846 (emphasis added), and that the savings and loan association must have been a federal savings and loan association. Since the defendant in *Brown*, like appellant in the instant case, did not object to the instruction, Brown was required to show plain error to justify a reversal. In

*Brown* we held that the language "as charged" in the jury instruction referred the jury to the indictment where the jurisdictional element plainly was set forth. We held that this rendered the instruction adequate under a plain error standard of review. *Id.* at 847–48.

In the instant case, not only did the instruction make it clear that the government must prove that the bank met the jurisdictional requirement of the statute, but, by use of the language *"as charged"*, it referred the jury to the indictment in precisely the same manner as the instruction did in *Brown*. Moreover, the court in the instant case specifically directed the jury's attention to the language in the indictment concerning the bank's FDIC insurance. It did so to explain the court's handwritten amendment of the indictment made in order to "charge the defendant as intended".[4]

In light of *Brown*, we hold on this ground that the instruction in the instant case was not plain error.

Secondly, appellant makes a more troubling argument. He asserts that, since the instruction stated that the jurisdictional element could be proven by showing either Federal Reserve membership, national bank status, or that the bank was insured by the FDIC, and since the indictment charged only that the bank was insured by the FDIC, the instruction amounted to a constructive amendment of the indictment, thus allowing the jury to convict appellant on matters not set forth in the indictment.

▇▇▇ If the court, through its instructions and facts it permits in evidence, allows proof of an essential element of a crime on an alternative basis permitted by the statute but not charged in the indictment, per se reversal is required. *Stirone v. United States*, 361 U.S. 212, 215–19 (1960); *United*

---

4. The indictment originally charged that the bank was insured by the Federal Savings and Loan Insurance Corporation. The court made a handwritten amendment of the indictment by changing the language "Savings and Loan" to "Deposit" in order to "charge the defendant as intended". Such an amendment was merely

one of form and not of substance. It did not require resubmission of the case to the grand jury. *United States v. Johnson*, 741 F.2d 1338, 1341 (11th Cir.1984), *cert. denied*, 471 U.S. 1117 (1985); *United States v. Janoe*, 720 F.2d 1156, 1158–59 (10th Cir.1983), *cert. denied*, 465 U.S. 1036 (1984).

States v. Young, 730 F.2d 221, 223 (5th Cir.1984); United States v. Ylda, 653 F.2d 912, 913–14 (5th Cir. Unit A Aug.1981) (per curiam) (on petition for rehearing and rehearing en banc) ("The misconstruction of an indictment is reversible error if it is possible that the defendant was tried and convicted for a crime other than that alleged in the indictment."). If, however, the court's instruction does not constructively amend the indictment, then the variance between the indictment and the instruction is reviewed on a harmless error standard. Id. at 913.

An analysis of Stirone [5] and two cases in our Court that discuss this issue in the context of crimes against banks satisfies us that reversal in the instant case is not warranted. In United States v. Fitzpatrick, 581 F.2d 1221 (5th Cir.1978) (per curiam), we held that reversal was required where the indictment set forth only one of three possible statutory bases for jurisdiction; the government proved another basis of jurisdiction not set forth in the indictment; and the court instructed the jury only on the basis the government proved, not on the basis set forth in the indictment. Id. at 1223. In United States v. Mize, 756 F.2d 353 (5th Cir.1985), we reversed the conviction because the indictment set forth one basis of jurisdiction; the government proved a second basis; and the court instructed the jury on the second basis and a third basis of its own. Id. at 355–56. Thus, in Stirone, Fitzpatrick, and Mize the

courts not only instructed the jury on an alternative basis of proving an essential element of the crime not charged in the indictment, but they allowed the government to adduce proof of the existence of an alternative basis.

The instant case, however, is distinguishable. The court here appears inadvertently to have instructed on two alternative bases not set forth in the indictment, but no evidence was adduced to support a finding that either of these two bases was applied to the bank.[6] Indeed, while no evidence was adduced by either party as to whether the bank was a member of the Federal Reserve System, the vice-president of the bank who testified as to its FDIC insurance also testified that the bank was not federally organized or chartered, indicating in the words of the jury instruction that the bank was not "organized under the laws of the United States". For us to hold that the jury might have convicted appellant on a jurisdictional basis not set forth in the indictment, we would have to believe that the jury might have based its verdict on a fact or facts—that the Bank was organized under the laws of the United States or was a member of the Federal Reserve System—for which there is either no evidence whatsoever or evidence to the contrary.

We find additional support in Ylda, supra, for affirming the instant conviction. In Ylda the defendant was indicted for violating a bribery statute. The indictment charged that the defendant "did ... ask, demand, exact, solicit, accept and receive"

---

5. In Stirone, the defendant was indicted under the Hobbs Act for interfering with the shipment of sand in interstate commerce from outside Pennsylvania to a steel mill within that state. The district court, however, permitted the government to offer proof that the defendant's actions in interfering with the sand shipment ultimately also interfered with the interstate shipment of steel from the mill. The district court also instructed the jury that it could convict the defendant if it found that his actions had interfered with either the sand shipment to the mill or steel shipments from the mill. Thus, in Stirone the jury essentially could have convicted the defendant for a crime—interference with steel shipments from the mill—not alleged in the indictment. As we indicate below, such was not a possibility in the instant case. See Stirone, supra, 361 U.S. at 212–14.

6. The second robbery for which appellant was tried and of which he was acquitted by the same jury involved a bank which was both a national bank and a bank insured by the FDIC. Since the government offered (barely adequate) proof that this bank met both of these alternative bases of jurisdiction, the court correctly instructed the jury on both of these jurisdictional bases. Unfortunately, the court gave only one instruction on the jurisdictional bases that was meant to apply to both counts of the indictment. The better course would have been for the court to have given separate instructions on the jurisdictional element for each count, limiting the bases discussed for each count to those bases set forth in the indictment for that count.

sums of money. The indictment did not charge that the defendant agreed to receive money, although this also was prohibited by the statute. In instructing the jury, however, the court tracked the statutory language and instructed the jury that the defendant could be convicted if he either demanded the money or agreed to accept it. *Ylda, supra,* 653 F.2d at 914. We held that such a variance was harmless beyond a reasonable doubt, because there was no evidence from which the jury could have found that the defendant only agreed to accept money—the alternative basis of wrongdoing under the statute but not charged in the indictment. There was, however, sufficient evidence for the jury to have found the element of the offense actually charged in the indictment. *Id.* at 914–15. Thus, there was "no possibility that the jury convicted [the defendant] on the basis of the extraneous elements interjected by the jury charge". *Id.* at 915.

The analogy to the instant case is clear. Although the court in the instant case interjected "extraneous elements" in its jury instructions, there simply was no possibility—in view of the trial evidence—that the jury based its verdict on these elements. "[T]he trial court's refusal to restrict the jury charge to the words of the indictment is merely another of the flaws in the trial that mar its perfection but do not prejudice the defendant". *Ylda, supra,* at 914.

We hold that, although the court in the instant case did not give model jury instructions, their shortcomings were harmless beyond a reasonable doubt and do not warrant reversing appellant's conviction.

### IV.

■ Finally, appellant argues that his $52,000 fine exceeds the $5,000 statutory maximum set forth in 18 U.S.C. § 2113(a) (1982). This argument fails, however, because the law in effect at the time of the offense permitted the fine imposed against him. The Criminal Fine Enforcement Act of 1984, which applied to offenses committed between January 1, 1985 and November 1, 1987, permitted a fine of up to $250,-000 in the instant case. Criminal Fine Enforcement Act of 1984, Pub.L. No. 98–596, § 6(a), 98 Stat. 3134, 3137 (codified at 18 U.S.C. § 3623 (Supp. IV 1986)).[7] The robbery in the instant case took place August 15, 1986, well within the effective dates of the statute.

We hold that the statute authorized appellant's fine of $52,000.

### V.

To summarize:

We hold that the government adduced sufficient proof that the bank was insured by the FDIC to permit the jury properly to convict appellant of violating 18 U.S.C. § 2113(a) (1982). We also hold that, although the district court's jury instructions were not model instructions, the errors in instructions did not constitute plain error warranting reversal and were harmless beyond a reasonable doubt. Finally, we hold that appellant's $52,000 fine was authorized by the statute.

AFFIRMED.

---

**7.** 18 U.S.C. § 3623 in relevant part provided: "(a) An individual convicted of an offense may be fined not more than the greatest of—
(1) the amount specified in the law setting forth the offense;
(2) the applicable amount under subsection (c) of this section;
(3) *in the case of a felony, $250,000;*

. . .

(c)(1) If the defendant derives pecuniary gain from the offense, or if the offense results in pecuniary loss to another person, *the defendant may be fined not more than the greater of twice the gross gain or twice the gross loss,* unless imposition of a fine under this subsection would unduly complicate or prolong the sentencing process."
Criminal Fine Enforcement Act of 1984, *supra,* 98 Stat. at 3137 (18 U.S.C. §§ 3623(a), 3623(c)(1) (Supp. IV 1986) (repealed effective November 1, 1987) (emphasis added).