[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JULY 01, 2008
THOMAS K. KAHN
CLERK

_____

No. 07-14670
Non-Argument Calendar

_____

D. C. Docket No. 06-00112-CR-5-KOB-JEO

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JIMMY DOYAL HINDMAN,
a.k.a. Jimmy D. Hindman,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

**(July 1, 2008)**

Before ANDERSON, HULL and FAY, Circuit Judges.

PER CURIAM:

Jimmy Doyle Hindman appeals his jury-trial convictions for one count of transporting a stolen motor vehicle, in violation of 18 U.S.C. § 2312; two counts of armed bank robbery, in violation of 18 U.S.C. § 2113(a) and (d); and two counts of brandishing a firearm during the commission of a violent crime, in violation of 18 U.S.C. § 924(c)(1)(A). Hindman argues that the government failed to prove that the deposits of the bank branches robbed were insured by the Federal Deposit Insurance Corporation ("FDIC"), as required by § 2113, Specifically, Hindman asserts that the government's witnesses only stated that the parent banks were federally insured at the time of trial, rather than that the deposits of the bank branches were insured by the FDIC at the times of the robberies. Hindman also argues that the district court erred in giving him incorrect mid-trial legal advice on the merits of presenting character witnesses. Specifically, Hindman asserts that the district court advised him that, if he called character witnesses, the government would be able to call other witnesses to introduce specific instances of misconduct and that those specific instances could be used to prove that Hindman committed the crimes charged. Hindman asserts that this legal advice was incorrect, as specific instances of misconduct only can be introduced on cross-examination and when such evidence only can be used to discredit the witness' opinion that the defendant has a good character. For the reasons discussed below, we affirm

2

Hindman's convictions and sentences.

## I.

Pursuant to the indictment, the bank-robbery charges stemmed from Hindman's August 1, 2003, robbery of the Dekalb Bank of Sand Rock, Alabama, and August 12, 2005, robbery of the Community Bank of Elkmont, Alabama.

At Hindman's jury trial, Billy Richard May, Jr., a codefendant of Hindman's previously convicted for his role in the offense, testified for the government that, on August 1, he and Hindman robbed a bank in Sand Rock. The bank was a "small country bank in a real rural area." May traveled to the bank in a car that he had stolen, at Hindman's direction, for that purpose. Hindman traveled to the bank in another, non-stolen car. Shortly before reaching the bank, Hindman parked the non-stolen car behind an abandoned trailer and rode the remainder of the way with May in the stolen car. Each man wore masks and carried two guns. They arrived at the bank minutes after it had opened, before any customers had arrived. During the robbery, May's job was to "watch the door" and parking lot to ensure that the police did not arrive. Hindman's job was to collect money from the bank teller drawers. After Hindman had collected all of the money, he and May drove back to the abandoned trailer in the  stolen car, left it, got into the non-stolen car, and drove into the woods. There, May took the guns and money and hid in the woods.

Hindman drove the rest of the way home, left the non-stolen car, got into a different car, returned to the woods, and retrieved May and the guns and money.

The government submitted security camera pictures taken of the bank on the morning of August 1. May identified himself standing near the door and Hindman taking money from bank teller drawers.

Myra Glen testified for the government that she was the branch manager of the Dekalb Bank in Sand Rock at the time of the robbery. When asked, "[Is] the Dekalb Bank, Sand Rock . . . a federally insured institution," Glen answered, "Uh-huh." When asked if the branch still was open, Glen answered that it had closed in July 2004. On cross-examination, Hindman did not address the federal-insurance status of the bank.

Billy Harvey, a codefendant of Hindman's previously convicted for his role in the offense, testified for the government that, on August 12, he and Hindman robbed a bank in Elkmont. Before that day, Hindman took Harvey to a bank in Sand Rock and told Harvey that Hindman and May had robbed that bank before. On August 12, Harvey traveled to the bank in a stolen car that Hindman had provided. Hindman traveled to the bank in a green car. Just before they reached the bank, Hindman parked the green car on the side of a dirt road and rode the remainder of the way with Harvey in the stolen car. Hindman brought guns. Each

man wore masks. They arrived at the bank minutes after it had opened, before any customers had arrived. During the robbery, May's job was to "keep watch" to ensure that the police did not arrive. Hindman's job was to collect the money. After the robbery, Hindman's plan involved driving the stolen car with Harvey back to the dirt road where the green car was parked, leaving the stolen car, getting in the green car with Harvey, driving into the woods and dropping off Harvey and the guns and money, returning home alone, getting in a different car, and returning to the woods that night to retrieve Harvey and the guns and money. However, the police saw Hindman and May fleeing the bank, and a chase ensued.

Donnie Johns, a police officer with the Elkmont Police Department, testified for the government that, in the course of the police chase, Hindman got ahead of the police, abandoned the green car, and disappeared. Jim Landers, a police officer with the Sheriff's Office of Limestone County, which encompasses Elkmont, testified for the government that, upon searching the vicinity of the abandoned green car, the police found masks, gloves, and ammunition. Heather Seubert, a DNA examiner with the Federal Bureau of Investigation, testified for the government that she found a match between DNA found on a mask collected by the police officers in the vicinity of the green car and DNA provided by Hindman.

Cory Griffin testified for the government that he was the branch manager of

the Community Bank in Elkmont at the time of the robbery, but since had become the vice president of a branch of a different bank. When asked, "Is the Community Bank federally insured," Griffin answered, "Yes, sir." When asked, by way of clarification, "Is it FDIC insured," Griffin again answered "Yes, sir." On cross-examination, Hindman did not address the federal-insurance status of the bank.

At the close of the government's case-in-chief, Hindman moved for a judgment of acquittal on the grounds that the government had not provided sufficient evidence for the jury to convict him. Specifically, Hindman argued that, as to Count 1, the evidence demonstrated that May, rather than Hindman, transported a stolen car across state lines. Hindman argued that, as to the remaining counts, the evidence was insufficient because it consisted primarily of testimony of convicted felons who lacked credibility. The district court overruled Hindman's motion.

Before presenting the defense case-in-chief, Hindman's counsel indicated to the district court that he had advised Hindman not to call character witnesses, but wished for the district court to advise Hindman on the dangers of this course of action. The district court cleared the courtroom of the government's attorneys and any spectators. The district court then advised Hindman:

> Anything that you do to put your character and your credibility at issue, which as of right now are not at issue, [will] allow the

6

government, then, to put before the jury your convictions, and your reputation in the community, which from what I have heard may include a reputation for being a bank robber . . . I don't think you want to the jury to hear that.

. . . If you put your character at issue, then [the government], in rebuttal, will probably put [May and Harvey] back on the stand, and maybe others, to say that not only did you [rob] these two banks, but that you also participated with them or with others in robbing other banks. And all that would tend to show that you participated in this bank robbery.

After Hindman responded to this advice by pointing out, while he had been in legal trouble in the 1980s, his character since had become that of a hardworking man, the district court reiterated to Hindman, "Either way, [the government is] going to put [May] back on the stand to talk about all these other bank robberies that he says you and he committed" and that:

Whatever you expect [the character witnesses] to testify about, what a good and kind man you are, and I don't doubt that you a good and kind man in the views of some people, but the government will be able to ask them[] if you have a reputation in your community for being a bank robber, or for carrying guns, or all those other type [of] things that right now the jury has not heard.

The district court gave Hindman a chance to further discuss the matter with his counsel. After this discussion, Hindman indicated that he did not wish to call the character witnesses and that he had reached this decision voluntarily.

At the close of Hindman's case-in-chief, he renewed his earlier motion for a judgment of acquittal and reiterated the grounds previously argued. The district

7

court denied the motion.

Before giving the case to the jury, the district court instructed the jury that, to convict Hindman on the bank robbery charges, it must find, inter alia, that Hindman took money then in the possession of a federally insured bank. The district court likewise advised the jury that "a 'federally insured bank' [meant] any bank the deposits of which [were] insured by the [FDIC]."

## II.

We review arguments not raised before the district court for plain error only. United States v. Hunerlach, 197 F.3d 1059, 1068 (11th Cir. 1999) (applying plain error review to a sufficiency-of-evidence argument); United States v. Woodard, 459 F.3d 1078, 1085-86 (11th Cir. 2006) (applying plain error review to a jury-instruction challenge). Specifically regarding sufficiency-of-the-evidence arguments, we have applied plain error review even when a defendant moved for a judgment of acquittal on sufficiency-of-the-evidence grounds but failed to articulate at that time the specific sufficiency-of-the-evidence claim later raised on appeal. Hunerlach, 197 F.3d at 1064, 1068-69. When plain-error review is appropriate, the defendant must show: (1) an error, (2) that is plain, and (3) that affected his substantial rights. United States v. Turner, 474 F.3d 1265, 1276 (11th Cir. 2007). If the defendant satisfies these three conditions, we may exercise our

8

discretion to recognize the error if that error "seriously affects the fairness, integrity, or public reputation of judicial proceedings." Id. (citation and quotation omitted).

As an initial matter, we will review both of Hindman's arguments for plain error only. Although Hindman moved for a judgment of acquittal, he did not specifically argue at that time that the government had failed to prove the federal-insurance element. Accordingly, we cannot reverse Hindman's convictions on this ground unless the district court committed an error that was plain and that affected Hindman's substantial rights and seriously affected the fairness, integrity, or reputation of the trial. See Hunerlach, 197 F.3d at 1064, 1068-69; Turner, 474 F.3d at 1276. Likewise, because Hindman admittedly raises his improper-legal-advice argument for the first time on appeal, we cannot reverse his convictions on this ground unless the district court committed an error that was plain and that affected Hindman's substantial rights and seriously affected the fairness, integrity, or reputation of the trial. See Woodard, 459 F.3d at 1085-86; Turner, 474 F.3d at 1276.

### III.

Evidence is sufficient to support a conviction so long as "any rational trier of fact" could have found proof beyond a reasonable doubt of the essential elements

9

of the crime in the evidence presented. United States v. Eckhardt, 466 F.3d 938, 944 (11th Cir. 2006), cert. denied, 127 S.Ct. 1305 (2007). Proof that the deposits of the bank in question were insured by the FDIC on the day the bank was robbed is an essential element of a § 2113 bank-robbery conviction. See United States v. Maner, 611 F.2d 107, 108 (5th Cir. 1980). While we never have specified the amount or type of evidence required to prove this essential element, we previously have held sufficient bank-employee testimony that the bank's deposits were FDIC-insured at the time of trial.

Specifically, in Cook v. United States, 320 F.2d 1258, 1259 (5th Cir. 1963), the government asked the bank's vice president, "Is your bank insured by the [FDIC]?" and, by way of clarification, "Are the deposits which you have there covered by the Federal Deposit Insurance Corporation?" Id. at 1259. The witness answered affirmatively. Id. The defendant did not object to the testimony or move for a judgment of acquittal, but later argued that the testimony was insufficient on the ground that the witness had not stated that the bank deposits were insured at the time of the robbery. Id. We applied plain error review and concluded that the proof was sufficient because the notion that "subsequent existence [is] evidence of existence at the time in issue" and "the common knowledge of the nearly universal prevalence of the banks of the United States having their deposits insured by the

10

[FDIC,] permits, if it does not require, an inference" that the bank deposits were federally insured at the time of the robbery. Id. at 259-60.

Likewise, in United States v. Williams, 592 F.2d 1277, 1281-82 (5th Cir. 1979), one witness testified that the deposits of the bank in question were insured by the FDIC, but admitted that he had never seen the FDIC-insurance contract and did not know if the premiums were paid. Another witness testified that the deposits of the bank in question were insured by the FDIC, but admitted that he did not know if the parent bank's FDIC-insurance contract covered the specific branch in question. Id. Despite these admissions and the witness' failures to state that the coverage applied to the branch in question at the time of the robberies, we found that the proof was sufficient. Id. We noted, though, that, given the witness' admissions, the level of proof offered "was probably close to the minimum [we] could allow." Id. at 1282.[1]

---

[1] We recognize that, after Cook and Williams, we repeatedly have lamented the government's minimal efforts to prove this essential element. For instance, in United States v. Maner, 611 F.2d 107, 110-12 (5th Cir. 1980), in which the government offered only an insurance certificate dated five years before the robbery in question, we stated that "we have difficulty comprehending why the Government repeatedly fails to prove this element more carefully since the Government's burden is so simple and straightforward. As in the other cases we have discussed, the Government treads perilously close to reversal in this case, and may soon find itself crossing the line from sufficiency to insufficiency." We did not, however, reverse the conviction. See Maner, 611 F.2d at 110-12; see also United States v. Platenburg, 657 F.2d 797, 799-800 (5th Cir. 1980) (holding that a bank insurance certificate dated seven years before the robbery in question was insufficient and reversing the conviction, but specifically noting that the facts of the case were distinguishable from those in Cook because the Platenburg defendant had moved for a judgment of acquittal specifically on the grounds that the government had not proven the federal-insurance element). While we have expressed dismay, though, we never have

The district court did not plainly err in allowing a § 2113 bank-robbery conviction based on the testimony of two witnesses that the bank was FDIC-insured. See Cook, 320 F.2d at 259-60; Hunerlach, 197 F.3d at 1068. The fact that neither witness testified that the banks were insured at the times of the robberies does not suggest plain error. Glen's testimony that the Sand Rock bank "is" federally insured could not have meant that it was insured at the time of the trial, as the bank had closed by the time of the trial. Likewise, Griffin's testimony that the Elkmont bank "is" federally insured likely did not mean that the bank was federally insured at the time of the trial, because Griffin no longer worked for that bank by the time of the trial. Thus, their testimony either could have meant that the banks were federally insured at the times of the robberies or at some point thereafter. Given our recognition that evidence of insurance after the fact can be seen as evidence of insurance during the fact, even the latter meaning would suffice. See Cook, 320 F.2d at 259-60. Moreover, nothing in the record suggests that small, rural banks are not as universally insured as other banks. See id.

Also, Hindman's suggestion that the witnesses' testimony only demonstrates

overturned the lower threshold suggested in Cook or otherwise specified a higher quantum of required evidence. Moreover, in a later case, United States v. Baldwin, 644 F.2d 381, 385 (5th Cir. 1981), we reiterated this low threshold by holding that "[p]roof of the certificate [of insurance] alone may be sufficient" and that "[u]ncontradicted testimony [that] the deposits were federally insured is sufficient." We do not find it necessary to stray from the Cook language now, as we find that the evidence presented was not so minimal as to cross the line mentioned in Maner. See Maner, 611 F.2d at 110-12.

that the two branches' parent banks may have been federally insured is without merit as to the Sand Rock bank. The prosecution specifically asked Glen if the "Dekalb Bank, Sand Rock" was federally insured, such that Glen's affirmative answer directly applies to that branch. As to the Elkmont Bank, although Griffin's testimony was not specifically as to this particular branch of the Community Bank, this apparent failure does not suggest plain error. In <u>Williams</u>, we applied a more-stringent standard than plain error and found sufficient the testimony of a witness who specifically acknowledged that he did not know if the parent bank's federal insurance covered the particular branch in question. 592 F.2d at 1281-82.

Finally, the fact that the witnesses did not specify that the bank deposits were insured and that Glen did not specify that the insurance was from the FDIC does not suggest plain error. There is no reason to believe that the witnesses could have been referring to any other form of insurance besides deposit insurance. Likewise, there is no reason to believe that Glen meant that the federal insurance came from a provider other than the FDIC. Therefore, although the government could have offered more exact evidence of the banks' FDIC-insured status, the testimony offered on this point did not result in plainly erroneous convictions. <u>See</u> <u>Turner</u>, 474 F.3d at 1276. Accordingly, we affirm Hindman's convictions as to this issue.

## IV.

We never have held that the district court cannot give mid-trial advice to a defendant, particularly when, as here, the defendant's attorney requested the court to do so.[2] Pursuant to Fed.R.Evid. 404, evidence of a defendant's character is admissible to prove action in conformity therewith only if offered by the defendant himself or by the prosecution to rebut the defendant's character evidence. Fed.R.Evid. 404(a)(1). Pursuant to Fed.R.Evid. 405, when the defendant's character is made an issue, it can be proved by reputation or opinion testimony given on direct examination. Fed.R.Evid. 405(a). Once a witness provides character evidence on direct examination, he can be cross-examined on relevant specific instances of conduct. Id. Evidence of other crimes, wrongs, or acts is never allowed to prove the character of the defendant in order to show action in conformity therewith. Fed.R.Evid. 404(b).

The district court did not commit plain error in advising Hindman on the merits of presenting character evidence. See Woodard, 459 F.3d at 1085-86. First, as we never have generally forbidden a district court from giving legal advice

---

[2] The cases cited by Hindman, United States v. Casallas, 59 F.3d 1173 (11th Cir. 1995) and United States v. Corbitt, 996 F.2d 1132 (11th Cir. 1993), are not applicable because they discuss a district court's provision of legal advice during a change-of-plea hearing and whether doing so violated Fed.R.Crim.P. 11's prohibition on district court involvement in plea negotiations. Fed.R.Crim.P. 11(c)(1).

during trial, any error committed by the district court in giving the advice was not plain, especially as the defendant's counsel requested the district court to give the advice. See Turner, 474 F.3d at 1276. Also, while the district court may have committed error in incorrectly advising Hindman that, by presenting character evidence, he would be opening the door for the government to call other witnesses to discuss his participation in past robberies, this error did not meet the plain-error standard because it did not affect Hindman's substantial rights or the fairness of the trial. See Fed.R.Evi. 404(a)(1), 405(a); Turner, 474 F.3d at 1276.

Given the substantial evidence presented as to Hindman's guilt of the crimes charged, it is not likely that the jury convicted him of the charges solely because he did not demonstrate that he has a reputation for having a good character or that some witnesses believed him to be of good character. Specifically, the jury's guilty verdict is substantially supported by May's description of how he and Hindman robbed the Sand Rock bank on August 1; pictures from the bank's security camera of May and Hindman robbing that bank; Harvey's description of how he and Hindman robbed the Elkmont bank on August 12; and DNA evidence linking Hindman to that robbery. In light of this evidence, there is no reason to believe that the jury would not have convicted Hindman but for the district court's incorrect advice. See Turner, 474 F.3d at 1276. Accordingly, we affirm

Hindman's convictions as to this issue.

**AFFIRMED.**