UNITED STATES of America,
Plaintiff-Appellee,

v.

Eddie Michael CARTER, Jr., Leonard Damron and Norman Louis Roberts, Defendants-Appellants.

Nos. 19148–19150.

United States Court of Appeals,
Sixth Circuit.

March 5, 1970.

Irving Tukel (Court Appointed), Detroit, Mich., for Eddie Michael Carter, Jr.

Arthur J. Tarnow (Court Appointed), Detroit, Mich., Carl Levin, Detroit, Mich., Defenders' Office Legal Aid and Defender Ass'n of Detroit, on brief, for Leonard Damron.

D. Michael Kratchman (Court Appointed), Detroit, Mich., for Norman Louis Roberts.

Henry J. Maher, Asst. U. S. Atty., Detroit, Mich., James H. Brickley, U. S.

Atty., Detroit, Mich., on brief, for appellee.

Before CELEBREZZE and COMBS, Circuit Judges, and O'SULLIVAN, Senior Circuit Judge.

O'SULLIVAN, Senior Circuit Judge.

Eddie Michael Carter, Jr., Leonard Damron and Norman Louis Roberts appeal from judgments entered upon a jury's verdict finding them all guilty of armed robbery of a branch of the City National Bank of Detroit. The branch in question was robbed at about 2:45 in the afternoon of February 23, 1967, by three armed men. They obtained approximately $20,000. The robbery was a bold affair with no attempt by the desperados to hide their identity or their armed activity. All were identified by several of the employees of the bank, and the record contains nothing of importance to impair the credibility of these witnesses. The evidence of the guilt of each was so clear that if there were any merit to the trial errors asserted, we would hold all of them harmless within the meaning of Rule 52(a) Fed.R.Crim.P. If Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed. 2d 705, 24 A.L.R.3d 1065, is applicable to this federal conviction, it is our belief that the errors charged were harmless beyond a reasonable doubt.

We discuss the assignments of error as follows:

### 1. *Evidence that the bank was insured by the FDIC.*

■ Government's Exhibit 1 was identified by an assistant cashier of the bank as being the "certificate of insurance issued by the Federal Deposit Insurance Corporation covering our bank deposits." No objection was made to the giving of that answer to the question which elicited it. On its being offered in evidence, objection was made that proper foundation was not laid for its admission. Prior to offering Exhibit 1, the same witness, in answer to a pertinent question, said:

"City National Bank is a member of the Federal Deposit Insurance Corporation which insures the depositors' accounts up to $15,000.00."

and that,

"The same coverage would be theirs [referring to the branch that was robbed] as exists in any of our branches, $15,000 per account."

No objections were voiced to the questions which produced the quoted answers, nor was there a motion to strike the answers. Exhibit One was properly admitted. It was identified as the original certificate furnished to the bank by Federal Deposit Insurance Corporation. Unaided by this certificate, the fact that the robbed bank was insured by FDIC was clearly shown.

### 2. *The instructions.*

■ None of the accused took the stand. Without request therefor, the District Judge instructed the jury:

"I think I should say at this point, too, that under the law and the Constitution no one is obliged to take a witness chair or testify in his own behalf. He may do so if he so desires, but the law does not impose upon him that obligation. None of the defendants in this case took the witness chair. That is their absolute right guaranteed to them by the Constitution. This is not an idle gesture and the fact that they didn't take the stand may not be considered by you as evidence of their guilt."

No request had been made that such an instruction be given, or that it not be given. The claimed fault is that it called the jury's attention to the fact that the defendants did not take the stand. While it might be the better practice for a trial judge to refrain from giving such an instruction unless asked to do so, we do not find reversible error in the giving of it here. No doubt able advocates might generally prefer that such an instruction not be given. In Bellard v. United States, 356 F.2d 437, 439 (1966), cert. denied 385 U.S.

856, 87 S.Ct. 103, 17 L.Ed.2d 83 (1966), the Fifth Circuit said,

"It is not error for a trial court, of its own volition, to charge the jury in accordance with 18 U.S.C. § 3481 that a defendant's failure to testify can not be considered as a circumstance against him." 356 F.2d at 439.

Such also is the rule of Hanks v. United States, 388 F.2d 171, 175 (10th Cir. 1968) and United States v. Garguilo, 310 F.2d 249, 252 (2nd Cir. 1962). This subject is discussed in a note in 18 A.L.R.3d 1335. To the extent that any state cases expressing an opposite view are factually in point with this case, we decline to follow them. See relevant observation in this regard in Judge Friendly's discussion in *Garguilo, supra,* at 252. Must our current anxiety for the constitutional rights of those accused of crime lead us to believe that an intelligent jury would not be aware that these silent, but obviously guilty, defendants had denied nothing of the government's case?

■ The District Judge also instructed the jury as follows:

"I must say to you that in every bank robbery and in every case where there is violence, there is a natural excitement and if we are to say that you can't take an identification of a witness because that witness was excited at the particular time, it would make it impossible to prove a case where an offense is charged where the offender has to be identified."

There was nothing wrong with this comment.

### 3. *Admission of hospital records.*

■ Defendant Damron produced as an alibi witness one Sandra Lee Taylor, a young lady who testified that she and Damron were together in a motel room during the time of the robbery. She also testified that before going to her planned meeting with Damron, she had been at the Grace Hospital Clinic. The record librarian of that clinic, testifying in rebuttal, produced as exhibits its relevant records. These showed that a Sandra Lee Taylor had been an out-patient of the Grace Hospital Clinic during the month of February, 1967. The dates of her visits were therein recorded, but contained no entry of a visit by Miss Taylor on the day of the bank robbery. When these exhibits were offered, Damron's counsel stated, "I have no objection." After the proofs were closed, Damron's counsel moved to exclude the hospital records because there had been no proof that Sandra Lee Taylor who was an out-patient at the Grace Hospital Clinic was the same Sandra Lee Taylor who testified for defendant, this despite the fact that the alibi witness, Sandra Lee Taylor, had identified herself as a patient at the Grace Hospital Clinic. Aside from the consent of Damron's counsel to the admission of the exhibits, the point is without merit.

### 4. *Sufficiency of the evidence.*

Each of the appellants was represented by separate counsel at trial and on appeal—all court appointed. The brief of each asserts that there was insufficient evidence to submit this case to the jury. One of the briefs states such assertion in this way:

"The great weight of the evidence was contrary to the verdict and a directed verdict should have been entered at the close of the evidence."

We applaud the zeal exhibited by counsel in this case in discharging their respective duties to the District Court and to us. We assure them, however, that their fidelity to such duties does not require that they hazard impairment of their standing as reliable officers of the court, by making *in this case* such an assertion as that quoted above.

We find no merit in these appeals.

Judgments affirmed.