67 F.3d 300
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
John COUCH (94-6019) and Marvin Collins (94-6020,
Defendants-Appellants.
 Nos. 94-6019, 94-6020.
 United States Court of Appeals, Sixth Circuit.
 Oct. 3, 1995.
 
 Before: MILBURN and NELSON, Circuit Judges and MORTON.*
 MILBURN, Circuit Judge.
 
 
 1
 In these consolidated appeals, defendant John Couch (Case No. 94-6019) appeals his convictions for two counts of armed bank robbery, in violation of 18 U.S.C. Sec. 2113(a), (d) and 18 U.S.C. Sec. 2; two related counts of using of a firearm during a crime of violence, in violation of 18 U.S.C. Sec. 924(c); and one count of bank robbery, in violation of 18 U.S.C. Sec. 2113(a) and 18 U.S.C. Sec. 2. Defendant Marvin Collins (Case No. 94-6020) appeals his sentence following his conviction for one count of armed bank robbery, in violation of 18 U.S.C. Sec. 2113(a), (d) and 18 U.S.C. Sec. 2; and one related count of using a firearm during a crime of violence, in violation of 18 U.S.C. Sec. 924(c). On appeal, the issues are (1) whether the district court erred in determining that defendant Couch's confessions were voluntary, (2) whether the government presented sufficient evidence at defendant Couch's trial to establish that the victim banks were insured by the Federal Deposit Insurance Corporation ("FDIC") at the times of the robberies, and (3) whether the district court erred in imposing a sentence on defendant Collins at the high end of the sentencing range established by the United States Sentencing Guidelines with regard to count one of the indictment. For the reasons that follow, we affirm in both cases.
 
 I.
 A.
 
 2
 This case involves three armed bank robberies carried out by defendants John Couch and Marvin Collins, along with various accomplices, on October 16, October 23, and November 12, 1992, in Memphis, Tennessee.
 
 
 3
 On the afternoon of October 16, 1992, defendants Couch and Collins robbed the National Bank of Commerce on Elvis Presley Boulevard in Memphis. Defendant Couch used a .38 caliber pistol in the robbery, and defendant Collins used a sawed-off shotgun. Both defendants escaped from this robbery in a getaway car that they had parked nearby.
 
 
 4
 On October 23, 1992, defendants Couch and Collins robbed the First American Bank at 4632 Millbranch in Memphis. They were assisted in this robbery by Ronald "Poochie" Collins and 16-year-old Bobby Nelson. A few hours before their second robbery, Bobby Nelson stole a car for the group to use as their getaway car. Defendant Couch and Ronald Collins then drove the stolen car to the bank to commit the robbery while defendant Collins and Bobby Nelson waited nearby in another car for the getaway. Both Defendant Couch and Ronald Collins carried .38 caliber pistols into the bank on this robbery. After robbing the bank, defendant Couch and Ronald Collins drove the stolen car to the location where defendant Collins and Bobby Nelson were waiting in the other car. Defendants Couch and Ronald Collins abandoned the stolen car, and they all escaped in the other car. Over $20,000 was taken during this robbery.
 
 
 5
 On the morning of November 12, 1992, defendants Couch and Collins robbed the Tri-State Bank at 2440 Elvis Presley Boulevard in Memphis. This time defendants Couch and Collins were assisted by Bobby Nelson and Patrick Couch, defendant Couch's brother. Bobby Nelson once again stole a car, a blue Trans Am, for the group to use in the robbery. The plan on this robbery was for defendant Collins and Patrick Couch to drive the stolen car to the bank and to commit the robbery while defendant Couch and Bobby Nelson waited nearby in a clean getaway car.
 
 
 6
 Defendant Collins and Patrick Couch entered the Tri-State Bank carrying pistols and committed the robbery. When they fled from the bank in the stolen car, however, they missed their connection with defendant Couch and Bobby Nelson. Defendant Couch and Bobby Nelson had been stopped by the police a short distance from the bank after bystanders told police officers that defendant Couch and Bobby Nelson had been cruising the area asking people if they had seen a blue Trans Am. Defendant Collins and Patrick Couch escaped from the vicinity after abandoning the stolen blue Trans Am.
 
 
 7
 After being stopped in the vicinity of the Tri-State Bank on November 12, 1992, defendant Couch was interviewed by Sergeant Herbert Adair of the Memphis Police Department. Initially, Sergeant Adair considered defendant Couch to be a witness rather than a suspect. Defendant Couch told Sergeant Adair that defendant Collins was responsible for the Tri-State Bank robbery and that he had used a blue Trans Am as his getaway car. Defendant Couch did not admit his own involvement in the robbery, and he was not arrested at that time. Defendant Couch was asked to report back to the police station for a further interview on the next day, November 13, 1992. At the second interview, defendant Couch told officers that his brother, Patrick Couch, had also been involved in the Tri-State robbery, but he again denied any involvement himself. After the officers took defendant Couch's statement, he was again released.
 
 
 8
 The police continued their investigation of all three bank robberies subsequent to these initial interviews of defendant Couch. After further investigation, Patrick Couch was arrested on November 13, 1992. Defendant Collins and Bobby Nelson were arrested on November 17, 1992, and both gave the police statements about who was involved in the robberies. Finally, on November 23, 1992, defendant Couch was arrested. After the arrest, officers advised defendant Couch of his Miranda rights. Defendant Couch then told officers that he wanted to talk about the robberies and his involvement in them but not at that particular time.
 
 
 9
 On the day following his arrest, November 24, 1992, defendant Couch was advised of his Miranda rights again, and he signed a waiver of rights form. He then gave detailed statements admitting his involvement in the robberies of Tri-State Bank, First American Bank, and National Bank of Commerce. These confessions were recorded by a typist and were signed by defendant Couch.
 
 B.
 
 10
 On May 25, 1993, a federal grand jury returned a nine-count superseding indictment naming defendant John Couch in five counts and naming defendant Marvin Collins in five counts. Patrick Couch and Ronald Collins were also named in the indictment, but they are not involved in these appeals. Count one charged defendants Couch and Collins with armed bank robbery, in violation of 18 U.S.C. Sec. 2113(a), (d) and 18 U.S.C. Sec. 2, for the November 12, 1992 bank robbery. Count two charged defendant Collins with carrying and using a firearm during the November 12, 1992 bank robbery, in violation of 18 U.S.C. Sec. 924(c). Defendants Couch and Collins were not charged in count three. Count four charged defendants Couch and Collins with armed bank robbery in violation of 18 U.S.C. Sec. 2113(a), (d) and 18 U.S.C. Sec. 2, for the October 23, 1992 bank robbery. Count five charged defendant Couch with carrying and using a firearm during the October 23, 1992 bank robbery, in violation of 18 U.S.C. Sec. 924(c). Defendants Couch and Collins were not charged in count six. Count seven charged defendants Couch and Collins with armed bank robbery, in violation of 18 U.S.C. Sec. 2113(a), (d) and 18 U.S.C. Sec. 2, for the October 16, 1992 bank robbery. Count eight charged defendant Collins with carrying and using a firearm during the October 16, 1992 bank robbery, in violation of 18 U.S.C. Sec. 924(c). Count nine charged defendant Couch with carrying and using a firearm during the October 16, 1992 bank robbery, in violation of 18 U.S.C. Sec. 924(c).
 
 
 11
 On October 27, 1993, defendant Couch filed a motion to suppress statements he made to police on November 12, 13, and 24, 1992, regarding the three bank robberies. On November 5, 1993, the district court conducted a hearing on defendant Couch's motion. Defendant Couch claims that he was told by the interviewing officers that if he signed the admission statements he would be prosecuted in state court rather than federal court, which would have resulted in a lesser sentence upon conviction. Defendant Couch did not have counsel present during any of his interviews. Sergeant Adair testified that the interviewing officers did not make any promises to defendant Couch during the November 24, 1992 interview. He also stated that the officers did not discuss with defendant Couch the length of any possible sentence or whether he would be prosecuted in state court or federal court.
 
 
 12
 The district court denied defendant Couch's motion stating:
 
 
 13
 The Court from this record cannot find that there was any promise made that was such an inducement that it overbore Mr. Couch's will. The Court just cannot find Mr Couch's testimony creditable about the promise he was made.
 
 
 14
 Suppression Hearing Transcript at 59 (quoted in Brief of Appellee at 10). Thereafter, on November 29, 1993, the district court filed a written order denying the motion. The order recited the following factual findings:
 
 
 15
 The record does not reveal any coercive activity on the part of officers. In fact, Couch's testimony concerning the difference in federal and state time is not credible. At most, the proof establishes a general discussion about Couch's knowledge that cooperation would assist him in his criminal prosecution. The law enforcement officers did not make any promises to John Couch that overcame his will. Couch's statements were freely and voluntarily given.
 
 
 16
 J.A. 121.
 
 
 17
 The trials of the defendants were severed. Defendant Couch was tried before a jury on January 10, 11, and 12, 1994. The government presented, among other evidence, defendant Couch's signed confessions and the testimony of his accomplice, Bobby Nelson. The jury returned guilty verdicts as to counts four, five, seven, and nine and a guilty verdict as to count one on the lesser included offense of unarmed bank robbery.
 
 
 18
 On April 13, 1994, defendant Collins pled guilty to counts one and two of the indictment. Pursuant to a plea agreement, counts four, seven, and eight against defendant Collins were dismissed.
 
 
 19
 On July 1, 1994, a sentencing hearing was held for both defendants. Defendant Couch was sentenced to a total term of imprisonment of 488 months. Defendant Collins was sentenced to a total term of imprisonment of 97 months, consisting of consecutive sentences of 37 months on count one and 60 months on count two. Judgments were entered against both defendants, and each defendant filed a timely notice of appeal.
 
 II.
 A.
 
 20
 Defendant Couch argues that his confessions were obtained in violation of his Fifth Amendment rights and the Due Process Clause of the Fourteenth Amendment. Specifically, defendant Couch claims that his confessions were not voluntary because they were induced with promises of leniency and threats of prosecution for false statements and were made outside the presence of counsel.
 
 
 21
 Determining the voluntariness of a confession is mixed question of law and fact which we review de novo, but we review the district court's findings of fact on the issue of voluntariness for clear error. United States v. Murphy, 763 F.2d 202, 206 (6th Cir.1985), cert. denied, 474 U.S. 1063 (1986); United States v. Dennis, 701 F.2d 595, 597 (6th Cir.1983); United States v. Brown, 557 F.2d 541, 547 (6th Cir.1977). Thus, a clearly erroneous standard applies to the district court's resolution of conflicts in witnesses' testimony. Dennis, 701 F.2d at 598; Brown, 557 F.2d at 547. The district court is afforded substantial deference because of its superior opportunity to observe the demeanor and judge the credibility of the witnesses. See Brown, 557 F.2d at 548.
 
 
 22
 In order for a confession to be admissible, it " 'must be free and voluntary; that is, [it] must not be extracted by any sort of threats or violence, nor obtained by any direct or implied promises, however slight, nor by the exertion of any improper influence.' " Bram v. United States, 168 U.S. 532, 542-43 (1897). It must be the product of the defendant's "free and rational choice." Greenwald v. Wisconsin, 390 U.S. 519, 521 (1968) (per curiam). This court has previously stated:
 
 
 23
 The test for voluntariness of a confession involves three factors. Threshold to the determination that a confession was "involuntary" for due process purposes is the requirement that the police "extorted [the confession] from the accused by means of coercive activity." Once it is established that the police activity was objectively coercive, it is necessary to examine petitioner's subjective state of mind to determine whether the "coercion" in question was sufficient to overbear the will of the accused. Finally, petitioner must prove that his will was overborne because of the coercive police activity in question. If the police misconduct at issue was not the "crucial motivating factor" behind petitioner's decision to confess, the confession may not be suppressed.
 
 
 24
 McCall v. Dutton, 863 F.2d 454, 459 (6th Cir.1988) (citations omitted), cert. denied, 490 U.S. 1020 (1989). The government must prove by a preponderance of the evidence that the confession is voluntary. Lego v. Twomey, 404 U.S. 477, 489 (1972).
 
 
 25
 In Williams v. Withrow, 944 F.2d 284 (6th Cir.1991), aff'd in part and rev'd in part, 113 S.Ct. 1745 (1993), we held that a confession was not voluntary where it was obtained after police told the defendant that he could either confess and be released or not talk and be immediately imprisoned. We acknowledged that "effective interrogation techniques require, to some extent, a carrot-and-stick approach to eliciting information from an uncooperative suspect." Williams, 944 F.2d at 289. "However, when promises of leniency, coupled with threats of immediate imprisonment, have a coercive effect on a suspect, we are obliged to inquire whether 'the "coercion" in question was sufficient to overbear the will of the accused.' " Id. We noted that the defendant's "statements were conditioned on his belief that he would be released if he talked. The officers' promises of leniency were intended to induce [the defendant's] admissions." Id.
 
 
 26
 Defendant Couch argues that this case is analogous to Williams and that the district court erred in not suppressing his confessions. We disagree. In this case, there was conflicting testimony at the suppression hearing regarding whether any promises were made to defendant Couch. The district court resolved the dispute in the government's favor. It found that "[t]he law enforcement officers did not make any promises to John Couch that overcame his will" and concluded that "Couch's statements were freely and voluntarily given." J.A. 121. We do not believe that the district court, which had the opportunity to observe the demeanor and judge the credibility of the witnesses, committed clear error in making this finding. Any promises that were made by the officers were not sufficient to overcome defendant Couch's free will and did not render his confessions involuntary. Therefore, the district court did not err in determining that defendant Couch's confessions were voluntary.
 
 B.
 
 27
 Defendant Couch argues that the government did not submit sufficient evidence to prove beyond a reasonable doubt that the victim banks were insured by the FDIC at the times of the robberies. He claims that the mere introduction of FDIC certificates does not meet the standard of proof now dictated by our appellate courts.
 
 
 28
 "A defendant claiming 'insufficiency of the evidence bears a very heavy burden.' " United States v. Vannerson, 786 F.2d 221, 225 (6th Cir.) (quoting United States v. Soto, 716 F.2d 989, 991 (2d Cir.1983)), cert. denied, 476 U.S. 1123 (1986). In reviewing the sufficiency of the evidence in support of a criminal conviction, we must determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 318-19 (1979); see also United States v. Vincent, 20 F.3d 229, 232-33 (6th Cir.1994). "[W]e will reverse a judgment for insufficiency of evidence only if, viewing the record as a whole, the judgment is not supported by substantial and competent evidence." United States v. Blakeney, 942 F.2d 1001, 1010 (6th Cir.1991), cert. denied, 502 U.S. 1008 (1991), and cert. denied, 502 U.S. 1035 (1992).
 
 
 29
 An essential element that the government must prove in a bank robbery prosecution under 18 U.S.C. Sec. 2113 is that the victim bank's deposits were insured by the FDIC at the time of the robbery. United States v. Mentz, 840 F.2d 315, 318 (6th Cir.1988); United States v. Wood, 780 F.2d 555, 556 (6th Cir.) (per curiam), cert. denied, 475 U.S. 1111 (1986). The burden of proof on that element is simple and straightforward and may be satisfied by testimony from an appropriate bank official or by the introduction of the victim bank's FDIC certificate. United States v. Rowan, 518 F.2d 685, 693 (6th Cir.) (concluding that a certificate of insurance which pre-dated the robbery coupled with a statement by the bank's branch manager that the bank was insured on the day of trial was sufficient to prove the bank's FDIC-insured status, even though the manager admitted that he did not have personal knowledge of whether the insurance premiums were paid during the time of the robbery), cert. denied, 423 U.S. 949 (1975); United States v. Riley, 435 F.2d 725, 726 (6th Cir.1970) (holding that an FDIC certificate properly identified by a bank auditor was sufficient to prove the bank's FDIC-insured status); see also United States v. Carter, 422 F.2d 519, 520 (6th Cir.1970) (allowing FDIC-insured status to be proven by the testimony of an assistant cashier that the bank was a member of the FDIC and the introduction of a certificate of insurance). In Rowan, we reasoned as follows:
 
 
 30
 [The defendant] argues that there was insufficient evidence to show that the Bank was insured at the time of the robbery. The evidence consisted of an FDIC certificate dated December 1969, a statement by the branch manager that his branch was FDIC-insured on the day of trial (April 1974), and the manager's admission that he did not know of his own personal knowledge that the premiums were paid in January and February 1974 (the robbery having occurred on January 15, 1974). Construing the evidence and drawing reasonable inferences in the light most favorable to the Government, we find that the branch was FDIC-insured both in December 1969 and in April 1974. The jury was allowed reasonably to infer therefrom that the branch was FDIC-insured on the day of the robbery.
 
 
 31
 Rowan, 518 F.2d at 693.
 
 
 32
 In this case, the government introduced the testimony of an official from each of the victim banks that his bank was FDIC-insured on the day of the robbery as well as a copy of each bank's FDIC certificate.[1] Therefore, while this case is similar to Rowan, the evidence in this case is stronger. Accordingly, we conclude that the government has met its burden of proving that the victim banks' deposits were insured by the FDIC at the times of the robberies.
 
 
 33
 Defendant Couch argues that Rowan is no longer of precedential value because this court has tightened the standard of proof required to prove a victim bank's FDIC-insured status. We disagree. Rowan has never been overruled, either explicitly or implicitly, by another decision of this court and is thus still valid and binding on us. See Salmi v. Secretary of Health & Human Servs., 774 F.2d 685, 689 (6th Cir.1985) ("[A] prior decision [of another panel of this court] remains controlling authority unless an inconsistent decision of the United States Supreme Court requires modification of the decision or this Court sitting en banc overrules the prior decision."). In support of his argument that Rowan is not valid, defendant Couch cites United States v. Wood, 780 F.2d 555 (6th Cir.) (per curiam), cert. denied, 475 U.S. 1111 (1986). In Wood, we noted that we were "troubled by the failure of the government to have introduced stronger proof of the FDIC-insured status of the bank at the time of the robberies." Id. at 557. Defendant Couch reads this language to impose a higher standard of proof. However, in Wood, this court was troubled by the fact that the government had failed to carefully prove the bank's FDIC-insured status, particularly in view of the simple burden of proof with which the government was faced. See id. We went on to hold that "the testimony offered was sufficient," despite the fact that the government did not present as strong a case as it could have. Id.[2]
 
 
 34
 Defendant Couch also relies on United States v. Schultz, 17 F.3d 723 (5th Cir.1994), claiming that Schultz now requires more than the minimal proof formerly accepted in cases such as Rowan. Defendant Couch, however, misreads Schultz. The Fifth Circuit in Schultz did not impose a higher burden of proof. See Schultz, 17 F.3d at 725-28. Instead, it held that the government had failed to meet the simple burden of proof required to establish a bank's FDIC-insured status. In fact, the court pointed out that it had "continually cautioned the Government that its failure to adequately prove the jurisdiction element might one day require the reversal of bank fraud convictions." Id. at 727. The court then noted, "That day ... has ... come today." Id. Therefore, defendant's reliance on Schultz is misplaced.
 
 
 35
 Finally, defendant Couch claims that the government must submit specific proof that the bank's FDIC premiums had been paid. This argument, however, is likewise foreclosed by our decision in Rowan. Rowan, 518 F.2d at 693. Therefore, defendant Couch's sufficiency of the evidence argument is without merit because the government met its burden of proving that the victim banks' deposits were insured by the FDIC at the times of the robberies.
 
 C.
 
 36
 Defendant Collins argues that the district court erred in imposing a sentence at the high end of the sentence range with respect to count one of the indictment. He contends that pursuant to 18 U.S.C. Sec. 3553(a),[3] a sentence of 30 months is "sufficient" and the imposed sentence of 37 months is "greater than necessary."
 
 
 37
 As stated above, defendant Collins plead guilty to count one of the indictment. Based on a total offense level of 19 and a criminal history category of I, the district court determined that the guideline imprisonment range for count one was 30 to 37 months. The district court sentenced defendant Collins to the high end of the guideline range--37 months imprisonment. It reasoned as follows:
 
 
 38
 With respect to Count I, the guideline range for Mr. Collins is thirty to thirty-seven months. I find that to be an incredibly-low guideline range for anyone who is convicted of bank robbery. I have always thought the guidelines didn't appropriately treat bank robbery, and this case is probably the foremost example of that that I have ever seen. Of course, Mr. Collins will receive the five-year consecutive sentence with respect to Count 2, but given the nature of the offense to which he has pleaded guilty, I just see no way I could do anything other than impose a sentence at the upper end of the guideline range with respect to Count 1.
 
 
 39
 The details of the offense are not something that would influence my judgment about whether the top end is appropriate or inappropriate. I think that the seriousness of the offense calls for a sentence at the upper end of the range. The Court's discretion is not great in this case, but I do have the right to exercise it to that extent, and I will do so.
 
 
 40
 J.A. 281-82. Defendant Collins does not challenge the district court's calculation of his sentence. Instead, he argues that "the District Court imposed the high end of the guidelines for one simple reason: [the district court's] personal belief that the guideline range is too low for bank robbery." Brief of Defendant Collins at 9.
 
 
 41
 Pursuant to 18 U.S.C. Sec. 3742, this court has jurisdiction to review a sentence if the sentence:
 
 
 42
 (1) was imposed in violation of law;
 
 
 43
 (2) was imposed as a result of an incorrect application of the sentencing guidelines; or
 
 
 44
 (3) is greater than the sentence specified in the applicable guideline range to the extent that the sentence includes a greater fine or term of imprisonment, probation, or supervised release than the maximum established in the guideline range, or includes a more limiting condition of probation or supervised release under section 3563(b)(6) or (b)(11) than the maximum established in the guideline range; or
 
 
 45
 (4) was imposed for an offense for which there is no sentencing guideline and is plainly unreasonable.
 
 
 46
 18 U.S.C. Sec. 3742(a); United States v. Isom, 992 F.2d 91, 93-94 (6th Cir.1993). Otherwise, we are without jurisdiction to review sentences that are within the guideline range. United States v. Lovins, 993 F.2d 1244, 1245-46 (6th Cir.1993); United States v. Morgan, 986 F.2d 151, 152 (6th Cir.1993) (per curiam); United States v. Sawyers, 902 F.2d 1217, 1221 n. 5 (6th Cir.1990), cert. denied, 501 U.S. 1253 (1991). In this case, the district court correctly calculated the guideline sentencing range and imposed a sentence within that range. Accordingly, we are without jurisdiction to review the sentence, and defendant Collins's argument is dismissed without further consideration.
 
 III.
 
 47
 For the reasons stated, the district court's judgments are AFFIRMED in all respects.
 
 
 
 *
 Honorable L. Clure Morton, United States District Judge for the Middle District of Tennessee, sitting by designation
 
 
 [1]
 Specifically, the government introduced the following evidence: With respect to the October 16, 1992 robbery of National Bank of Commerce, Michael Joseph Massey, a branch manager, testified that the bank's deposits were insured by the FDIC at the time of the robbery and introduced a copy of the bank's current FDIC certificate. With respect to the October 23, 1992 robbery of First American Bank, William Edward Eanes, a bank security officer, testified that the bank's deposits were insured by the FDIC at the time of the robbery and introduced the bank's current FDIC certificate. With respect to the November 12, 1993 robbery of the Tri-State Bank, Patrick Smith, a bank auditor, testified that the bank's deposits were insured by the FDIC on the date of the robbery and also introduced a copy of the bank's current FDIC certificate
 
 
 [2]
 The Fifth Circuit similarly recognized that the failure to carefully prove the jurisdiction element was a "nationwide plague infecting United States Attorneys throughout the land." See United States v. Maner, 611 F.2d 107, 112 (5th Cir.1980)
 
 
 [3]
 18 U.S.C. Sec. 3553 provides in relevant part:
 (a) Factors to be considered in imposing a sentence.--The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider--
 (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
 (2) the need for the sentence imposed--
 (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
 (B) to afford adequate deterrence to criminal conduct;
 (C) to protect the public from further crimes of the defendant; and
 (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
 (3) the kinds of sentences available;
 (4) the kinds of sentence and the sentencing range established for--
 (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, and that are in effect on the date the defendant is sentenced; or
 (B) in the case of a violation of probation or supervised release, the applicable guidelines or policy statements issued by the Sentencing Commission pursuant to section 994(a)(3) of title 28, United States Code;
 (5) any pertinent policy statement issued by the Sentencing Commission pursuant to 28 U.S.C. 994(a)(2) that is in effect on the date the defendant is sentenced;
 (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
 (7) the need to provide restitution to any victims of the offense.
 18 U.S.C. Sec. 3553(a).