# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 14-20727

United States Court of Appeals
Fifth Circuit

**FILED**

September 29, 2015

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

MARK ALLAN JAMES,

Defendant - Appellant

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:11-CR-869

Before JONES, SMITH, and SOUTHWICK, Circuit Judges.

EDITH H. JONES, Circuit Judge:*

Appellant Mark James was convicted of both a wire fraud conspiracy to defraud Hewlett Packard and a money laundering conspiracy, in violation of 18 U.S.C. §§ 1349 and 1956(h), respectively. He was sentenced to concurrent terms of 60 months' imprisonment, supervised release, and restitution exceeding $13 million. His audacious scam enabled him to bypass HP's controls on a special deep discount program and pocket the savings for himself in subsequent computer equipment sales.

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 14-20727

On appeal, James raises only two issues: whether the indictment was constructively amended during the government's closing argument; and whether the district court abused its discretion by refusing to hold a post-verdict hearing concerning a hearing-impaired juror. Finding no reversible error of fact or law, we affirm.

1.    James objected contemporaneously to one comment in the government's closing argument. The indictment stated that James conspired "with others, known and unknown to the grand jury" in committing wire fraud. James's theory of defense was that HP knew he and his confederates were reselling computer equipment they obtained through the Big Deal program on the open market contrary to HP's rules for the discount program. James argued that because HP "condoned" his activities, he had no intent to defraud. In closing, the government responded that even if a salesman or a person working in an HP warehouse knew what James was up to, this did not mean that HP condoned James's fraudulent purchases and reselling. Instead, it made those employees co-conspirators. James contends that this response constructively amended the indictment by turning the indicted "outside conspiracy," organized without HP's knowledge or acquiescence, into an "inside conspiracy" against the company.

Like the district court, we find no merit in this contention. The indictment is broad enough to cover unnamed conspirators. Moreover, the government was entitled to inform the jury of a basic feature of corporate law: knowledge of low level employees cannot necessarily be imputed to the victim corporation itself. An indictment is impermissibly amended only where a court "allows proof of an essential element of the crime on an alternative basis permitted by the statute but not charged in the indictment." *United States v. Slovacek*, 867 F.2d 842, 847 (5th Cir. 1989). That the indictment named co-conspirators who were outside HP did not, under its specific "known and

unknown" terms foreclose the government from proving the involvement, had it chosen to do so, of an employee inside HP.  We emphasize, however, that the government's argument here is best read only as a hypothetical response to the "condonation" argument.

2.  The ability of a juror to hear the trial proceedings is "an internal matter," *Tanner v. United States*, 483 U.S. 107, 118 (1987).  This court has held that "in order to initiate any post-verdict inquiry into an internal matter regarding a juror, an extremely strong showing of juror incompetence must be adduced, and substantial evidence of incompetence must originate from a non-juror source." *United States v. Webster*, 960 F.2d 1301, 1306 (5th Cir. 1992) (citation omitted).   James denies the applicability of this stringent standard on the basis that the juror's hearing deficit was considered before trial and re-raised post-verdict.  But the only case to which he refers is distinguishable because it concerned allegations about juror conduct that were raised *and* delved into before the verdict was rendered.  *United States v. Sotelo*, 97 F.3d 782, 797 (5th Cir. 1996).  An extraordinary showing is reasonably required, however, when the losing party waits to impugn a juror until after rendition of the verdict.  *Weaver v. Puckett*, 896 F.2d 126, 128 (5th Cir. 1990).

No extraordinary showing was made of this juror's hearing difficulty.  The district court carefully accommodated the juror's self-described deficits by placing her nearest the witness box and instructing her to raise her hand if she could not hear at any point.  James's only specific objections are that (a) the court had to repeat two questions to the juror during voir dire, and (b) the juror hesitated before being the first one polled on the verdict of conviction.  Notably, defense counsel informed the court before it dismissed alternate jurors at the close of trial that he was comfortable with "the usual procedure."  In other words, defense counsel withdrew his previously expressed concern about this juror's hearing difficulty.  The trial court witnessed these events and later

wrote that the juror never indicated she was having any trouble hearing the proceedings. As to the polling, the court concluded that the juror was more likely hesitant because of the nature of an unfamiliar request rather than because she was hard of hearing. We find no error or abuse of discretion in the court's refusal to hold a post-verdict hearing or declare a new trial because of the juror's hearing impairment.

The judgment of conviction is **AFFIRMED**.