# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 17-20420

United States Court of Appeals
Fifth Circuit

**FILED**

August 15, 2018

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

       Plaintiff - Appellee

v.

HENRY LEE LONDON, JR.,

       Defendant - Appellant

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:14-CR-167-1

Before REAVLEY, GRAVES, and COSTA, Circuit Judges.

PER CURIAM:*

Henry Lee London, Jr. was convicted of one count of escape (count one), two counts of bank robbery (counts two and four), and one count of attempted bank robbery (count three). He appeals only his bank robbery and attempted bank robbery convictions, arguing that his Sixth Amendment Confrontation Clause rights were violated when prosecutors introduced out-of-court statements from a FDIC official. We agree. Accordingly, we REVERSE

---

\* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 17-20420

London's convictions for bank robbery and attempted bank robbery (counts two, three, and four) and REMAND for new trial on those counts. London's conviction and sentence for escape (count one) are AFFIRMED.

## I.

On March 20, 2014, a man wearing a baseball cap, blue jeans, and a dark blue shirt robbed a BBVA Compass Bank ("Compass") in Houston. The man approached Rashad Deckard, a teller, and passed him a note stating, "This is a robbery.  Give large bills." Deckard gave the culprit $1500, and the man left. The bank sent photographs from a security video to the FBI.

Four days later, a man wearing a baseball cap and dark clothing walked into an International Bank of Commerce ("IBC") in Houston. He put his fists on the counter, leaned in, and demanded money from Ambrosia Collins, a bank employee. Collins then reached for the cash in her drawer, but the man walked away. The attempted robbery (the "IBC attempt") lasted approximately 15 seconds. Like the Compass robbery, IBC sent photographs to the FBI.

On the same day, a similar-looking man robbed a nearby Comerica Bank. Myra Menjivar, a Comerica teller, testified that the culprit wore a cap and sunglasses. Comerica sent photos to the FBI, where Special Agent Kevin Katz was the assigned investigator.

Katz noticed the suspect wore the same clothing on all three occasions: a blue baseball hat with no logo, a black shirt, jeans, and tan-colored shoes. On March 24th, the same day as the IBC attempt and Comerica robbery, Katz learned that Henry Lee London, Jr. had escaped from a federal halfway house. He compared London's driver's license photo with the bank photos and noticed a resemblance. The next day, the FBI received an anonymous tip through Crime Stoppers, identifying London as the person who robbed Comerica. Following the tip, Katz interviewed Tracy Brewster, a halfway-house employee, who identified London as the man in the bank photos.

No. 17-20420

On March 27, 2014, London was arrested when he wrecked his girlfriend's car. A search of the car revealed a blue baseball hat on the driver's side floorboard.[1] London was indicted on one count of escape, two counts of bank robbery (Compass and Comerica), and one count of attempted bank robbery (IBC). He elected to put the Government to its burden of proof and proceeded to trial.

The main issue at trial was identity. Two of London's ex-girlfriends and a halfway-house employee identified him as the person in the bank videos. Meanwhile, none of the bank employees were able to identify London. However, as the end of the trial neared, London's defense counsel noticed what they perceived as a fundamental problem in the Government's case: a lack of evidence to prove that the banks were FDIC insured.

The federal bank-robbery statute makes it a crime to take or attempt to take "by force and violence, or by intimidation, . . . from the person or presence of another . . . any property or money . . . belonging to, or in the care, custody, control, management, or possession of, *any bank*, credit union, or any savings and loan association." 18 U.S.C. § 2113(a) (emphasis added). In turn, one of the ways in which the statute defines "bank" is "any institution the deposits of which are insured by the Federal Deposit Insurance Corporation." *Id.* § 2113(f). "Proof that the institution meets [the] definition of 'bank' *at the time of the robbery* is an essential element of the offense that must be proven beyond a reasonable doubt to establish federal jurisdiction." *United States v. Guerrero*, 169 F.3d 933, 944 (5th Cir. 1999) (quoting *United States v. Slovacek*, 867 F.2d 842, 845 (5th Cir. 1989)) (emphasis added). Although easy to overlook, "[w]ithout a showing of the institution's [FDIC-insured] status, in legal effect

---

[1] The legality of the search is not at issue.

there is no 'bank' to be robbed." *United States v. Trevino,* 720 F.2d 395, 400 (5th Cir. 1983).

When the Government rested, the FDIC evidence consisted of the testimony of Katz and Menjivar, and the FDIC certificates for each bank. The certificates do not indicate coverage of the specific branch locations robbed and all significantly predate the robberies.[2] Katz's testimony, which was over objection, relied on the certificates as proof of FDIC-insured status. And Menjivar, the Comerica teller, testified without objection that Comerica was FDIC insured based on signs posted at the bank. There was no testimony from Compass or IBC employees about FDIC insurance. Seeing a problem, London moved for a judgment of acquittal under Federal Rule of Criminal Procedure 29, arguing that the Government failed to prove the banks were FDIC insured at the time of the robberies.

The district court allowed the Government to reopen its case, leading to the evidence at the center of this appeal. Through Agent Katz, the Government then introduced a letter from Ralph E. Frable, an Assistant Executive Secretary at the FDIC, and three "Certificate[s] of Proof of Insured Status" ("COPs").[3] The COPs contained notarized, first-person statements made by Frable that declared: (1) he had official custody of the FDIC's records, (2) the "insurance applicable to the main office" was applicable to the individual Compass, IBC, and Comerica branches, and (3) that two exhibits attached to the COPs were official records of the FDIC.[4] The COPs also contained the following declaration:

---

[2] The FDIC certificates are dated as follows: Compass (November 8, 1993), IBC (May 1, 1989), and Comerica (November 1, 2007).

[3] The Certificates of Proof are identical with the exception of the information identifying the banks and the corresponding insurance dates.

[4] Attached to each COP is an "Exhibit A" and "Exhibit B." For simplicity, we refer to Exhibit A as the "Admission History" and Exhibit B as the "Branch History Report."

No. 17-20420

I further certify that, after diligent search, no record or entry in the official records of the Corporation has been found to exist which terminated the status of [Compass/IBC/Comerica] as an insured depository institution . . . and that the [bank] retained its status as an insured depository institution . . . through and including [the corresponding robbery date].

Frable's letter explained that he was sending the documents in response to Katz's request for proof of FDIC coverage. All three COPs and Frable's letter were dated October 28, 2015, more than a year and a half after London's arrest. After Katz read the additional documents to the jury, the Government rested (again), and London was convicted on all counts. Frable was not present and did not testify at London's trial. London now appeals, arguing that the admission of the COPs and Frable's letter violated his Sixth Amendment Confrontation rights.[5] He properly preserved the issue for appellate review. London does not appeal his escape conviction.

## II.

When properly preserved, this court reviews a Confrontation Clause challenge *de novo. United States v. Tirado-Tirado*, 563 F.3d 117, 122 (5th Cir. 2009). "A defendant convicted on the basis of evidence introduced in violation of the Confrontation Clause is entitled to a new trial unless the admission of that evidence constitutes harmless error, meaning that there is no reasonable possibility that the improperly admitted evidence might have contributed to the conviction." *Id.* at 126. "In determining whether an error is harmless we look to the totality of circumstances including all of the evidence adduced." *United States v. Watkins*, 741 F.2d 692, 695 (5th Cir. 1984). "A court must then decide whether, absent the so-determined unconstitutional effect, the evidence

---

[5] London also appeals his sentence, arguing that his instant and prior federal bank robbery convictions do not qualify as crimes of violence under the sentencing guidelines. *See* U.S.S.G. §§ 4B1.1; 4B1.2. However, he acknowledges the issue is foreclosed by *United States v. Brewer,* 848 F.3d 711 (5th Cir. 2017). We do not address the issue further.

remains not only sufficient to support the verdict but so overwhelming as to establish the guilt of the accused beyond a reasonable doubt." *Id.* (quoting *Harryman v. Estelle*, 616 F.2d 870, 876 (5th Cir. 1980) (en banc)).

## III.

The Sixth Amendment guarantees a criminal defendant the right "to be confronted with the witnesses against him." U.S. CONST. amend. VI. Thus, the Confrontation Clause bars the admission of out-of-court testimonial statements unless the declarant-witness is unavailable and the defendant had a prior opportunity to cross-examine. *Crawford v. Washington*, 541 U.S. 36, 59 (2004); *United States v. Acosta*, 475 F.3d 677, 680 (5th Cir. 2007).[6]

The Supreme Court has described statements "which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial" to be part of a "core class" of testimonial statements. *Crawford*, 541 U.S. at 51–52. Thus, a statement is testimonial if its "primary purpose" is to "establish or prove past events potentially relevant to later criminal prosecution." *United States v. Duron-Caldera*, 737 F.3d 988, 992–93 (5th Cir. 2013) (citing *Davis v. Washington*, 547 U.S. 813, 822 (2006)). Records "specifically produced for use at trial," as opposed to those kept in the ordinary course of government business, "are testimonial and are at the heart of statements triggering the Confrontation Clause." *United States v. Martinez-Rios*, 595 F.3d 581, 586 (5th Cir. 2010) (internal quotations omitted).

In *Melendez-Diaz v. Massachusetts*, 557 U.S. 305 (2009), the Supreme Court held that "certificates of analysis" showing forensic results violated the Confrontation Clause. *Id.* at 329. The certificates were notarized and offered

---

[6] It is undisputed that Frable did not testify at trial. No party has alleged (or even insinuated) that Frable was unavailable or that London had a prior opportunity to cross-examine him. Accordingly, we focus our analysis on whether Frable's statements are testimonial.

to prove a substance was, in fact, cocaine. *Id.* at 307. The Court explained that the statements were "solemn declaration[s]" made under circumstances that "would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." *Id.* at 311.

In *United States v. Martinez-Rios*, 595 F.3d 581 (5th Cir. 2010), we held the Confrontation Clause was violated when prosecutors introduced a "Certificate of Nonexistence of Record" ("CNR"). *Id.* at 586. The CNR, authored by a non-testifying government employee, explained that a search of agency records revealed nothing to indicate the defendant received consent to reenter the United States. *Id.* at 583–84. The CNR, like the certificates in *Melendez-Diaz*, was specifically produced for use at trial and "establish[ed] . . . a fact necessary to convict." *Id.* at 586. Thus, it was error to admit the CNR without the testimony of the records analyst—though the conviction was ultimately affirmed under plain error. *Id.* 586–87.

Turning to the case at hand, the Government appears to concede the issue, arguing only that any such error was harmless. In any event, we are firmly convinced that the admission of the COPs and Frable's letter violated the Confrontation Clause. As Frable explained in his letter, the documents were specifically prepared for use at trial: "Dear Mr. Katz: By email dated October 26, 2015, you requested proof of the insured status of the three depository institutions . . . In response to that request, we are enclosing [COPs] certifying that these institutions were insured . . . during the time periods in question." Both the letter and COPs are dated October 28, 2015, more than a year and a half after London's arrest. Thus, the date of creation and Frable's own words indicate the documents were specifically prepared for use at trial. *See Crawford*, 541 U.S. at 51–52 (2004); *see Bullcoming v. New Mexico*, 564 U.S. 647, 664 (2011) (explaining an unsworn declaration created solely for an

evidentiary purpose ranks as testimonial).[7] Further, paragraph five of the COPs contains what amounts to the CNR from *Martinez-Rios*. Frable certified that "after diligent search, no record or entry" was found terminating the FDIC status of any of the three banks.

The effect of the COPs and letter was to allow Frable, an out-of-court witness not subject to cross-examination, to testify via "certificate" to an essential element of London's three bank-robbery-related convictions. Admission of these statements was error and violated London's Sixth Amendment Confrontation Clause rights. *See United States v. Sandles,* 469 F.3d 508 (6th Cir. 2006) (reaching the same conclusion with similar affidavits from the Assistant Executive Secretary of the FDIC).

## IV.

The Government argues the error was harmless because the remaining evidence establishes that the banks were FDIC insured at the time of the robberies. We disagree. "In determining whether an error is harmless we look to the totality of circumstances including all of the evidence adduced." *Watkins*, 741 F.2d at 695. Our inquiry is not one of evidentiary sufficiency. Instead, we must determine whether the remaining evidence is so overwhelming as to establish the guilt of the accused beyond a reasonable doubt. *Id.*

For decades, this court has expressed frustration over flimsy evidence of FDIC-insured status.[8] In assessing a variety of challenges to evidentiary

---

[7] London does not appear to challenge the Branch History Reports and Admission History records (admitted in conjunction with the COPs and Frable's letter) on appeal. Unlike the COPs and letter, they appear to be regularly kept government records. *See United States v. Martinez-Rios*, 595 F.3d 581, 586–87 (5th Cir. 2010) (distinguishing regularly kept records from those specifically prepared for trial).

[8] *See United States v. Guerrero,* 169 F.3d 933, 944 (5th Cir. 1999) ("It would not seem necessary to caution the Government on the importance of solidly proving this."); *United States v. Schultz,* 17 F.3d 723, 727–28, n.11 (5th Cir. 1994) ("This Court has often warned that insufficient attention to the . . . element might become the Government's nemesis."); *United States v. Trevino,* 720 F.2d 395, 400 (5th Cir. 1983) ("Without a showing of the

sufficiency, we have broadly interpreted the direct testimony of high-level bank officials.[9] However, in the absence of such testimony, we have been more stringent.

In *United States v. Maner*, 611 F.2d 107 (5th Cir. 1980), we held there was "[j]ust barely" enough evidence to uphold a conviction when the FDIC proof consisted of (1) a certificate of insurance, (2) testimony from the bank's assistant vice president/security officer identifying the certificate of insurance, and (3) testimony from the branch manager that he had seen a certificate of insurance in the bank vault and that copies of the insurance certificates were posted on teller windows for public display. *Id.* at 108–12.

In *United States v. Platenburg*, 657 F.2d 797 (5th Cir. 1981 Unit A.), we clarified that *Maner* outlined the lowest level of acceptable proof. *Id.* at 800. Indeed, the *Platenburg* panel reversed the conviction and dismissed the indictment when the only evidence of FDIC insurance was a copy of the certificate of insurance predating the charged events by seven years. *Id.*

In the absence of the constitutionally problematic COPs and letter, the evidence regarding Compass's FDIC status consists of (1) Agent Katz's testimony that the FDIC certificate "just shows that the . . . Compass Bank robbery is FDIC insured," (2) the FDIC certificate itself, dated November of 1993, and (3) the Admission History and Branch History Report attached to

---

institution's section 2113(f) status, in legal effect there is no 'bank' to be robbed."); *United States v. Platenburg,* 657 F.2d 797, 799 (5th Cir. Unit A 1981) ("[P]rosecutors have been extremely lax in the treatment accorded this element."); *United States v. Maner,* 611 F.2d 107, 112 (5th Cir. 1980) ("[W]e have difficulty comprehending why the Government repeatedly fails to prove this element more carefully since the Government's burden is so simple and straightforward.").

[9] *See United States v. Slovacek*, 867 F.2d 842, 845–47 (5th Cir. 1989) (finding testimony from a bank vice president that the bank was insured on the day of the robbery was close to the "minimum permitted"); *see, e.g., United States v. Rangel*, 728 F.2d 675, 676 (5th Cir. 1984) (finding testimony by an assistant vice president sufficient to establish FDIC status).

Frable's COP. There is no FDIC testimony from a Compass employee. The remaining evidence treads perilously close to the minimum level of proof required by our precedent. *See, e.g.*, *Platenburg*, 657 F.2d at 800; *Maner*, 611 F.2d at 108–12. At best, the documents establish that the main office of Compass bank was FDIC insured in 1993 and the branch was insured in 2004.[10] The Government argues that Agent Katz's testimony bridges any evidentiary gap between the date of the FDIC certificate and the date of the robbery. However, Katz (an FBI agent) was merely explaining the certificates, which themselves are insufficient. *See Platenburg*, 657 F.2d at 800. This razor-thin evidence is not "so overwhelming as to establish the guilt of the accused beyond a reasonable doubt." *Watkins*, 741 F.2d at 695.

The same can be said for the IBC attempt evidence. When asked if IBC was federally insured, Katz said, "Yes . . . That's what the . . . certificate indicates, that they are insured." The certificate of insurance is from May of 1989, and the latest date indicated by the Branch History Report is November 2008. A thorough review of the record reveals nothing close to overwhelming evidence indicating that Compass and IBC were FDIC insured at the time of the offenses.

The evidence underlying Comerica's FDIC insurance differs in one respect: the Government did present testimony from the teller, Menjivar, who answered "yes" when asked if the bank's FDIC insurance was current. While this type of testimony has been "[j]ust barely" sufficient when it has come from

---

[10] The Branch History Report only lists the address of the branch and says "Effective Date 07/29/2003 . . . Processed Date 08/16/2004." London disputes that the documents make any connection between the bank's main office and the specific Compass Bank branch that was robbed. Because we are reviewing the evidence in the harmless-error context, the evidentiary sufficiency of these documents is a question for another day.

senior-level employees, Menjivar is a "customer service teller."[11] Further, Menjivar's personal knowledge of Comerica's FDIC insurance appears to be based on the fact it was "posted" around the bank. Were we reviewing for the sufficiency of the evidence, Menjivar's testimony might make for a close case. But merely sufficient evidence does not establish harmless error. *Compare United States v. Baker*, 17 F.3d 94, 96 (5th Cir. 1994) (When reviewing for sufficiency of the evidence, the court "considers the evidence in the light most favorable to the verdict"), *with Watkins*, 741 F.2d at 695 (Under a harmless error analysis, the "court must . . . decide whether, absent the so-determined unconstitutional effect, the evidence remains not only sufficient to support the verdict but so overwhelming as to establish the guilt of the accused beyond a reasonable doubt").

In addition to the minimal FDIC evidence, the Government's harmless error argument is hampered by the fact that the inadmissible COPs and letter were highlighted to the jury. Prosecutors reopened their case-in-chief for the specific purpose of admitting the COPs and letter. And Agent Katz read the inadmissible documents, line by line, to the jury.[12] Further, the improper evidence was referenced by the Government in closing arguments. *See, e.g.*, *Tirado-Tirado*, 563 F.3d at 126 (noting additional emphasis of improper evidence weighs against harmless error).

---

[11] *Maner*, 611 F.2d at 112 (holding testimony of an assistant vice president/bank security officer and branch manager "[j]ust barely" met the minimum level of proof required); *but see United States v. Trice*, 823 F.2d 80, 86–87 (5th Cir. 1987) (holding the direct testimony of a loan officer was sufficient proof in 18 U.S.C. § 1014 false statements case).

[12] London argues that Frable's inadmissible statements curtailed any credible closing argument that focused on the lack of FDIC evidence. At a minimum, the error likely required defense counsel to drop the issue or risk losing credibility with the jury. *See United States v. Watkins*, 741 F.2d 692, 695 (5th Cir. 1984) (effect of the error on defense counsel's conduct is relevant to harmless error).

No. 17-20420

In sum, the Government cannot establish the error was harmless. *See id.*; *Watkins*, 741 F.2d at 695. London is entitled to a new trial.[13] *See United States v. Alvarado-Valdez*, 521 F.3d 337, 343 (5th Cir. 2008) (remanding for new trial as the result of a Confrontation Clause violation).

## V.

London's convictions for bank robbery (counts two and four) and attempted bank robbery (count three) are REVERSED and REMANDED for new trial. His conviction and sentence for escape (count one) are AFFIRMED.

---

[13] The Government requests that if we reverse any of London's convictions, we remand any remaining convictions for resentencing. We decline the request.